Elmon Roy PEARSON, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–74–405.

Court of Criminal Appeals of Oklahoma.

March 11, 1975.

E. Terril Corley, Asst. Public Defender, Tulsa, for appellant.

Larry Derryberry, Atty. Gen., James L. Swartz, Asst. Atty. Gen., Jahn D. Rohrer, Legal Intern, for appellee.

## OPINION

PER CURIAM:

Appellant, Elmon Roy Pearson, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Tulsa County, Case No. CRF–71–2093, for the offense of burglary in the Second Degree, AFCF, in violation of 21 O.S.1971, § 1435. His punishment was fixed at a term of fifteen (15) years imprisonment, and from said judgment and sentence a timely appeal has been perfected to this Court.

At the trial, Roy Samuel Bryant, a tavern operator, testified that on the evening of November 13, 1971, he was at his residence, 325 South Yorktown, until 11:00 P. M. At 11:00 P.M., he prepared to leave his residence and go to the tavern. He testified that he locked both doors and believed that no windows were open. He further testified that he did not notice any broken glass.

The confrontation between the two burglars and Mr. Bryant and his wife occurred around 3:00 A.M., when they returned from their tavern. As they entered their house, Mr. Bryant was struck from behind and knocked to the floor. He testified that he was unable to observe the person that struck him. His wife was knocked over into a corner by the other burglar. When asked by the State to make an in-court identification of the person or persons that confronted him and his wife, Mr. Bryant testified that, due to poor lighting, he ". . . couldn't swear positive, but it looked like the defendant over there." (Tr. 21)

As a result of the burglary, Mr. Bryant testified that he missed from his residence these items: one 9 millimeter Belgium Luger, his billfold, $200 in bills, a camera flash attachment, and $120 worth of quarters in a sack. Mr. Bryant made a subsequent survey of the premises and discovered near the back door a broken window and broken glass.

Mr. Bryant testified that shortly after the burglars left, he walked out the front door and went across the street to a neighbor's house and called the police. It took between eight and ten minutes after the burglars fled to place this call. According to the witness, it took another eight to ten minutes for the police to arrive. The two officers that responded to the call did not search the interior or the exterior of the house, nor did they recover any of the stolen property. Witness testified that he did not observe any object within three feet of the front porch door.

Hattie Fern Bryant, the spouse of Roy Samuel Bryant who previously testified, stated that they arrived at their residence between 2:00 A.M. and 3:00 A.M. The witness identified the gray wig (State's Exhibit Number One) as the gray wig she removed from one of the burglars. She testified that both burglars were wearing wigs like Exhibit Number One, and that she thinks her assailant was wearing gloves.

Mrs. Bryant further testified that the burglars were approximately 30 years of age, of medium height, and that one of them had dark hair. She further stated that the defendant was taller than the per-

sons she had observed. On re-direct examination, the witness testified that she got a set of car keys from the burglar she wrestled with.

David E. Roberts, a Tulsa police officer, testified that he observed the defendant on the east side of the street moving briskly between the sidewalk and the houses in a northbound direction about 150 feet from the Bryant's residence. The officer then questioned the defendant and subsequently arrested, searched and handcuffed him. Officer Roberts testified that the defendant carried no billfold or identification other than club cards. Officer Roberts further testified that he did not observe any objects near the front entrance of the Bryant's home.

Officer Robert Boston, the State's final witness, testified that he observed the defendant running and assisted Officer Roberts in the arrest. Witness Boston then went to defendant's residence and made a search with the consent of the defendant's spouse. Officer Boston then returned to the scene of the burglary and began to search with a flashlight. He found a wallet (State's Exhibit Number Two) near the front entrance in the grass just beside the sidewalk. The wallet contained papers with the defendant's name written on them. Witness Boston then found a pair of gloves (State's Exhibit Number Three) about 100 feet from the residence near an automobile. The car was unlocked and according to the officer, he entered and searched the interior. Inside the glove box, he found papers with defendant's name on them.

Officer Boston admitted that he did not recover any of the items missing from the Bryant's residence. He also stated that no wig was found on defendant or at his residence.

Officer Boston testified further that he arrived and observed defendant at 2:23 A. M. This concluded the case-in-chief for the State.

The defense made their opening statement and called as their first witness Officer Kenneth R. Miller.

Officer Miller was the first officer to arrive at the residence. He arrived between 2:20 and 2:30. He approached the front entrance using a flashlight and did not notice any objects near the front entrance when he entered and later left the residence.

Sharron Linebarger, the operator of the Talk Of The Town tavern, testified as defendant's alibi witness that on the night of the crime the defendant was there from 10:30 to 2:15 or 2:20. Before 10:30 P.M., Evelyn Faye Fleming called the bar twice to talk to the defendant. Witness told the defendant that she called and he then placed a call.

Linebarger further testified that defendant could not have committed the crime since he was in her tavern at the time the burglary was allegedly committed.

Before this trial, Sharron Linebarger testified that she had told no authorities about the defendant's presence in her tavern on the night of the crime, although she had known that the defendant was a suspect within a week after the burglary was committed.

The defendant then took the stand in his own behalf, testifying that he was at the Talk Of The Town until closing time, which was about 15 or 20 minutes past 2:00 A.M. Defendant stated that, while he was there, he called Mike's Lounge to speak to Evelyn Faye Fleming, and at closing time, he left in his automobile to go there and see her.

On the way, according to defendant's testimony, his car's hot light flashed and he pulled over to the curb. He knocked on the door of a house on the east side of the street to see if he could get some help, but no one answered. It was not the house of Mr. and Mrs. Bryant. He then testified that he was returning to his parked car using the sidewalk. He further testified his car was three-quarters of a block from the Bryant's house.

The defendant denied ownership of State's Exhibit Number Three (the gloves) and denied ever having State's Exhibit Number One (the wig) in his possession.

He admitted that State's Exhibit Number Two (the wallet) was his. But he testified it was in his glove compartment during the time in question.

On cross-examination, the defendant admitted a prior conviction for armed robbery.

In the defendant's first proposition of error, he asserts that he was denied fundamental due process because Officer Boston searched his vehicle without a search warrant. The warrantless search of a parked vehicle can only be justified on exigent circumstances. The burden is on the State to prove that a warrantless search is reasonable as coming within one of the few defined exceptions to warrant requirement. See Norton v. State, Okl.Cr., 501 P.2d 877; Coolidge v. New Hampshire, 403 U.S. 443, 460, 91 S.Ct. 2022, 29 L.Ed.2d 564. In the case at bar, the State has not attempted to so prove but rather, has relied upon the harmless error rule.

In Wing v. State, Okl.Cr., 490 P.2d 1376, 1381, the Honorable Judge Brett speaking for the Court, stated:

"However, the fruits of the search challenged by defendant did not constitute a material, vital, or essential part of the evidence incriminating the defendant. They were matters of a collateral nature. This evidence was not so prejudicial that it 'fatally infected' the conviction and its exclusion from consideration would not have affected the verdict. Therefore, although admission of the fruits of the search was error it did not fatally infect the conviction and is thus harmless error which does not require reversal of the conviction."

We hold by analogy that the illegally seized papers inside the glove box constituted harmless error, and therefore, defendant's first proposition is without merit.

The defendant next argues that he was denied a fair trial because of improper questions and comments of the prosecutor.

The questioning alleged improper consists of asking the alibi witness, Sharron Linebarger, why she had waited until the trial to come forward and clear the defendant, rather than doing so earlier. The Court of Criminal Appeals has recently held in Glover v. State, Okl.Cr., 531 P.2d 689, that such questioning is not improper. The accused privilege against self-incrimination does not extend to third parties. See also Starks v. State, Okl.Cr., 510 P.2d 1389 (1973).

The improper comment arose out of the following questions and answers (Tr. 129–132):

"Q. Now, Mr. Pearson, you previously heard the testimony of Officer Roberts and Officer Boston . . . . indicating that you made a comment in their presence that you didn't have a car?

A. No, I never told them I never had a car.

Q. They were lying?

A. As far as I am—

Q. You didn't explain that to the officers at the time they arrested you?

A. They didn't ask me, they didn't give me a chance to explain nothing.

Q. I see. Why were you running along the fence area . . . . ?

A. I didn't know there was a fence there, sir.

Q. Well, the area from the sidewalk to the tree line, or whatever?

A. I wasn't.

Q. You weren't.

A. No, sir.

Q. So if Officer Roberts and Officer Boston testified to that they would be lying, right?

A. Yes, sir.

MR. DUNN: I object to the question, Your Honor.

THE COURT: Well he has already answered.

MR. TRUSTER: Well, that is two lies for the officers.

MR. DUNN: I object to the remarks of counsel.

THE COURT: The remarks of the counsel were uncalled for and—

MR. TRUSTER: I apologize.

THE COURT: Well, now just a moment. It isn't necessary when you make notations to make comments yourself as to the testimony. We will propound the questions and the witness will answer them."

After a careful review of the transcript, we do not feel that the comment, "Well, that is two lies for the officers," is prejudicial to the defendant. The comment could have been phrased as a question and its only effect was to summarize the testimony. In view of this, we fail to see how the testimony of the defendant has been prejudiced.

■ The defendant's third proposition of error alleges the verdict is contrary to the evidence, and was rendered on insufficient evidence. After careful review of the record, we cannot agree. We have consistently held that when there is competent evidence in the record from which the jury could reasonably conclude that the defendant was guilty as charged, the Court of Criminal Appeals will not interfere with the verdict, even though there is a sharp conflict in the evidence and different inferences may be drawn therefrom, since it is the exclusive province of the jury to weigh the evidence and determine the facts. See Jones v. State, Okl.Cr., 468 P.2d 805; West v. State, Okl.Cr., 484 P.2d 538.

In his next assignment of error, the defendant asks that we reverse or modify the verdict because the combination of errors and tactics of prosecutor denied him the due process of law. With this contention, we cannot agree. The tactics of prosecutor, plus the evidence obtained from the illegal search, are harmless error.

■ The defendant's final proposition alleges that the sentence was excessive. Suffice it to say that the punishment was well within that allowed by law.

The record is free of any error which would justify modification or reversal and under such circumstances we are of the opinion that judgment and sentence should be, and is hereby, affirmed.