Jerry Anthony BLACK, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F-81-575.

Court of Criminal Appeals of Oklahoma.

May 11, 1983.

Johnnie O'Neal, Asst. Public Defender, Tulsa, for appellant.

Jan Eric Cartwright, Atty. Gen., State of Okl., Patrick W. Willison, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

CORNISH, Judge:

The appellant was convicted of Robbery by Fear in the District Court of Tulsa County and was sentenced to five (5) years' imprisonment.

On July 31, 1980, a man entered a Tulsa Surfco service station, and with one hand in his pocket told the clerk, "This is a stick-up." He robbed the clerk of approximately one hundred and fifty dollars ($150.00). The victim's identification of the appellant as the robber in photographic and pre-trial lineups, and at trial, comprised the State's case. The appellant testified in his own behalf and presented three alibi witnesses.

■ The appellant first urges that State's Exhibit No. One was improperly admitted at trial because it was extrinsic evidence used to impeach his testimony on cross-examination regarding a collateral matter—how he had worn his hair in the past. The victim testified that the man who robbed her had worn his hair in a fashion known as "cornrows." The appellant stated on cross-examination that he wore his hair in an afro style during the summer of 1980, but that he had in the past changed hairstyles. The State was then allowed to introduce into evidence a 1977 photograph depicting the appellant with his hair in "cornrows."

A careful examination of the transcript shows that the photographic evidence was not impeaching, and therefore not within the purview of 12 O.S.1981, § 2608(B), as the appellant contends. Rather the evidence was used to show that the appellant in the past had worn his hair in cornrows, and was therefore admissible as it tended to make more probable the identification of the appellant as the robber than without the evidence. See 12 O.S.1981, § 2401. The question of the remoteness of the photograph went to the weight to be given it by the jury, not to its admissibility.

■ It is next urged the prosecutor improperly cross-examined the appellant's alibi witnesses regarding their failure to come forward prior to trial. Such questioning is not improper as the accused's privilege against self-incrimination does not extend to third parties. *Pearson v. State*, 532 P.2d 1399 (Okl.Cr.1975).

■ We find, however, that the prosecutor's remarks during closing argument that he had participated in the preliminary hearing and that none of the alibi witnesses had testified, was improper. Although we do not condone argument outside the record,

appellant's objection was sustained and appellant failed thereafter to ask for an admonition. It does not appear that the remark was so prejudicial that it determined the jury's verdict; reversal is therefore not necessitated. See *Smith v. State,* 599 P.2d 413 (Okl.Cr.1979).

■ It is next claimed that the prosecutor committed fundamental error by impeaching the appellant regarding his post-arrest silence. It is improper for the prosecutor to comment on the fact that an accused has exercised his right to remain silent. However, as stated in *Costilla v. State,* 609 P.2d 788 (Okl.Cr.1980), such a rule does not come into play where a defendant waives the right to remain silent. A reading of the record discloses that the appellant did not exercise his right, but instead conversed freely with the police. The prosecutor cross-examined the appellant concerning what he did say to the police when he turned himself in, not about his silence. Cf. *Maxville v. State,* 629 P.2d 1279 (Okl.Cr.1981) (where the questions were asked for the purpose of determining what was said at the time, rather than to show that some exculpatory statement had not been made).

■ Further, the prosecutor's statements during closing argument—that if appellant had nothing to fear, why didn't he tell the detective that he was with his alibi witness—was not impermissible comment. Rather it was proper comment on evidence fairly in the record. Impeachment by the prosecution to contradict a defendant who testifies to an exculpatory version of events and claims to have told the police the same version upon arrest is permissible. *Doyle v. Ohio,* 426 U.S. 610, n. 11 at 619, 96 S.Ct. 2240, n. 11 at 2245, 48 L.Ed.2d 91 (1976)[1].

The appellant testified he had told the detective in the case that he had been in Muskogee on July 31, 1980. On rebuttal the detective testified that the appellant had made no such statement. Since the appellant had made statements at the time,

the prosecutor's discussion of the content and discrepancy between the appellant's and the detective's versions did not constitute comment on the right to remain "silent" within the meaning of the Fifth Amendment. *Anderson v. Charles,* 447 U.S. 404, 100 S.Ct. 2180, 65 L.Ed.2d 222 (1980), illustrates this point. In *Anderson* the Supreme Court overturned the lower court's holding that *Doyle* barred questions which concerned the defendant's failure to tell the police the story he recounted at trial. There the defendant had not exercised the right to remain silent. The Supreme Court wrote that "[a]s to the subject matter of his statements, the defendant has not remained silent at all." 447 U.S. at 408, 100 S.Ct. at 2182, 65 L.Ed.2d at 226. It further observed that although "[e]ach of two inconsistent descriptions of events may be said to involve 'silence' insofar as it omits facts included in the other version.... *Doyle* does not require any such formalistic understanding of 'silence' ..." Id., 447 U.S. at 409, 100 S.Ct. at 2182, 65 L.Ed.2d at 227.

The appellant next contends that he was prejudiced in his right to a fair and impartial trial by accumulated improper sidebar remarks, cross-examination, and closing argument by the prosecutor. Not all of the remarks were objected to at trial, nor were those objections which were sustained followed by requests for admonition to the jury. See *Smith v. State,* supra.

■ We have examined the remarks complained of and find that the following merit discussion. During closing argument, following defense counsel's objection, the prosecutor responded:

"'I object.' When it hurts, object. When it starts to hurt, he objects. That's what you have heard ..."

And, again when defense asked that its continuing objection be noted, the prosecutor again responded:

"I object. It hurts ..."

---

1. *Doyle* supra, holds that a prosecutor may not impeach a defendant's exculpatory story, told for the first time at trial, by cross-examining about his failure to have told the story after receiving *Miranda* warnings at the time of arrest.

Counsel should refrain from casting aspersions upon opposing counsel. *Fry v. State,* 91 Okl.Cr. 326, 218 P.2d 643 (1950). Although the prosecutor's comments here did not rise to the level of those condemned in *Pannell v. State,* 640 P.2d 568 (Okl.Cr. 1982), or in *Fry v. State,* supra, he clearly was engaging in intentional brinkmanship. However, in light of the victim's repeated and positive identifications of the appellant and the resulting minimum sentence, we find that any prejudice resulting from the remarks did not determine the verdict.

Judgment and sentence is therefore AFFIRMED.

BRETT, J., concurs.

BUSSEY, P.J., concurs in results.