Owen INGRAM, Appellant,

v.

STATE of Oklahoma, Appellee.

No. F–85–97.

Court of Criminal Appeals of Oklahoma.

May 18, 1988.

David Autry, Asst. Appellate Public Defender, Norman, for appellant.

Michael C. Turpen, Atty. Gen., Susan Stewart Dickerson, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

PARKS, Judge:

Owen Ingram, appellant, was tried by jury and convicted of Robbery by Fear (21 O.S.1981, § 792), After Former Conviction of Two or More Felonies (21 O.S.1981, § 51(B)), in Case No. CRF–83–72, in the District Court of Washington County, the Honorable Janice Dreiling, Associate District Judge, presiding. The jury assessed punishment at twenty-five (25) years imprisonment. Judgment and sentence was imposed in accordance with the jury's verdict.

The question of first impression we address today is whether it is an abuse of discretion to admit the accused's "mug shot" into evidence to prove identity because of changed appearance and permit the jury to review the mug shot during the guilt or innocence phase of trial when the accused does not take the stand and put his character into issue. To resolve this issue, we adopt the three-pronged balancing test enunciated in *United States v. Fosher*, 568 F.2d 207, 214 (1st Cir.1978), and *United States v. Harrington*, 490 F.2d 487, 494 (2nd Cir.1973).

The facts relevant to this issue are as follows: On February 17, 1983, a man robbed the Lander's Food Palace in Bartlesville, Oklahoma. The assistant manager and the bookkeeper described the robber as being 6' to 6'2" tall, weighing between 200 and 220 lbs, with a full, thick beard and mustache, and having long hair sticking out from under a cap. Both victims picked appellant's mug shot from a photographic lineup. Based upon this identification, the police entered appellant's name into the National Crime Information Computer. Approximately three months later, appellant was arrested in Washington state and extradited to Oklahoma. When booked into the Washington County jail, appellant possessed a Colorado driver's license issued two weeks after the robbery. Appellant's photograph on the driver's license depicts him with a full, extremely heavy beard and mustache.

By time of trial appellant's appearance had changed dramatically, and he appeared clean shaven, with his hair cut shorter and weighed approximately 280 lbs. The assistant manager made a positive in-court identification of appellant as the robber despite his changed appearance. The manager based his identification on the similarities between the robber's eyes and nose and appellant's eyes and nose. The bookkeeper testified she was 99% certain that appellant robbed her, but could not be 100% certain because of his changed appearance. Both witnesses confirmed their earlier identification of appellant from his mug shot shown to them in the photographic lineup.

Appellant and the State stipulated to the driver's license photograph as depicting his appearance two weeks after the crime, and this photograph was introduced into evidence for purposes of establishing identity. Over vigorous objection by defense counsel, the trial court entered into evidence all seven of the mug shots, including appellant's mug shot, shown to the witnesses in the photographic lineup approximately one week after the crime.

In chambers, counsel objected: "If these pictures come in, you know, the jig's up. That's the case. I mean, there is no way to cover over Tulsa Police Department, Tulsa, Oklahoma. Who else has their picture taken in front of the thing with inches on it? ... The jurors are going to know that the men who are depicted in these photos have records or else they wouldn't have their pictures taken." The State proposed covering up the Tulsa Police Department identifying marks on the face of each mug shot with white tape. Counsel responded, "The stickers. My God. What are the juror's going to think that these stickers are covering up, a hole in his shirt? I mean, they can just pull the little stickers right off and look at it and put it back on. I would if I were a juror."

After the trial court admitted the mug shots, appellant demurred to the evidence and rested without putting on evidence or taking the stand.

■ It is a general rule that when put on trial, an accused must be convicted, if at all, by evidence which shows guilt of the offense charged, and proof that the accused is guilty of other offenses not connected with the crime for which he is on trial must be excluded. *Sweatte v. State*, 732 P.2d 476, 477 (Okla.Crim.App.1987). The law in this state is clear that it is reversible error to put the accused's reputation in issue until such time as he brings his character into issue. *Harvell v. State*, 479 P.2d 586, 589 (Okla.Crim.App.1971). *See also* 12 O.S.1981, § 2404(A)(1).

Although evidence of other crimes or acts is not admissible to prove the character of the accused when he has not put his character into issue, evidence of other

crimes or acts may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident. 12 O.S.1981, § 2404(B); *Sweatte*, 732 P.2d at 477. In the instant case, appellant's driver's license and mug shot were introduced into evidence for the purpose of proving identity because of his changed appearance.

■ The admissibility of photographs into evidence is a question of legal significance for the trial court. Photographs are admissible when the probative value is not substantially outweighed by the danger of unfair prejudice to the accused. *Diaz v. State*, 728 P.2d 503, 512 (Okla.Crim.App. 1986). *See also* 12 O.S.1981, § 2403. Photographs which show the accused's appearance at the time of the crime are admissible because they tend to make more probable the identification of the accused as the robber than without the evidence. *Black v. State*, 663 P.2d 22, 23 (Okla.Crim.App. 1983). We have no need to apply the Section 2403 balancing test to the admissibility of appellant's driver's license because appellant and the State stipulated to this photograph and it was introduced into evidence without objection.

■ Admission of the accused's mug shot into evidence to prove identity, however, presents a special problem requiring us to balance the State's need to introduce the photograph to prove identity against the accused's need to be protected from the inherent prejudice flowing from the mug shot. The three factors of the balancing test are: (1) The State must have a demonstrable need to introduce the photographs; (2) the photographs themselves, if shown to the jury, must not imply that the accused has a prior criminal record; and (3) the manner of introduction at trial must be such that it does not draw particular attention to the source or implications of the photographs. *Fosher*, 568 F.2d at 214–15. *Harrington*, 490 F.2d at 494. This test presupposes that the photographs are relevant to a material issue at hand. *Fosher*, 568 F.2d at 215.

■ Applying the above factors to the facts of this case, we first inquire whether the State had a "demonstrable need" to introduce appellant's mug shot into evidence. The assistant manager positively identified appellant in court, but the bookkeeper testified she was only 99% certain of her identification because of appellant's changed appearance. Photographic identification showing appellant's appearance at the time of the crime was crucial to the State's case. However, in this case, that need was satisfied by the introduction into evidence of appellant's driver's license proving his appearance and weight within two weeks of the crime. Therefore, there was no "demonstrable need" to introduce the mug shot to prove identity. There was certainly no demonstrable need to introduce into evidence the mug shots of the other six suspects shown to the victims shortly after the robbery.

The second factor to be considered. is whether the mug shot implies from its face that appellant had a prior criminal record. Appellant's mug shot is a classic, three-view, photograph. One view shows appellant from head to foot standing before a wall marked in feet and inches. The other two views show appellant's face, one from the front and the other in profile. The State did nothing to alter the face of this mug shot other than to inartfully put a white sticker over the Tulsa Police Department identification. No attempt was made to photocopy the mug shot and paste the three views on separate sheets of paper. Nor was any effort made to excise the height marker from behind appellant. We believe that no reasonable juror could fail to know from viewing this mug shot in the form submitted that appellant had previously been in trouble with the law. Moreover, the jurors knew that the witnesses picked this mug shot from the photographic lineup three months before appellant's arrest. Consequently, the jurors knew this photograph was taken in connection with another, previous, crime. "The [State's] failure to take such simple precautionary measures, which go far in protecting the defendant's right not to be convicted on the basis of evidence of another crime, clearly

operated to focus the jury's attention on matters prejudicial to the defendant." *Fosher*, 568 F.2d at 215. Therefore, the State failed to satisfy the second prong of the balancing test.

The final factor to be considered is the manner in which the photographs were entered into evidence. Here, argument concerning the admissibility of the mug shots was held outside the hearing of the jury, and the placement of the white stickers on the face of the photographs occurred outside the view of the jury. No testimony identifying these mug shots as coming from the Tulsa Police Department was put before the jury prior to introducing the mug shots into evidence in contravention of *Coulter v. State*, 734 P.2d 295, 299 (Okla. Crim.App.1987). *See also Blevins v. State*, 603 P.2d 1168, 1171 (Okla.Crim.App.1979). Hence, the State satisfied the third prong of the balancing test.

The State failed to satisfy the first two prongs of the balancing test. The probative value of the mug shots was substantially outweighed by the danger of unfair prejudice under Section 2403. It was, therefore, an abuse of discretion to admit the mug shots into evidence. *Fosher*, 568 F.2d at 217. We cannot find that the error of admitting the mug shots into evidence was harmless beyond a reasonable doubt and did not contribute to appellant's conviction. *Chapman v. California*, 386 U.S. 18, 24–26, 87 S.Ct. 824, 828–29, 17 L.Ed.2d 705 (1967). Therefore, we reverse and remand for a new trial.

Finally, we note that had appellant taken the stand and been impeached by his prior criminal record under 12 O.S.1981, §§ 2609(A), or 2609(B), a different standard of review would apply. Similarly, had appellant's mug shot been introduced into evidence during the punishment stage of trial to prove his former convictions under 21 O.S.1981, § 51(B), the test we adopt today would not apply.

For the foregoing reasons, appellant's judgment and sentence should be, and hereby is, REVERSED and REMANDED for a new trial consistent with this opinion.

BRETT, P.J., concurs.

BUSSEY, J., dissents.

BUSSEY, Judge, dissenting:

In the instant case it is readily apparent that the jurors were aware that appellant had been identified from a photographic lineup, and the introduction of the photograph from which the identification was made could not have prejudiced the jury. At most, its introduction was cumulative and corroborative of the driver's license photograph depicting the appearance of the appellant at a time near the commission of the offense. I would affirm the conviction.