Sam J. AGEE, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–76–577.

Court of Criminal Appeals of Oklahoma.

April 6, 1977.

Lewis B. Ambler, Bartleville, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., Jerry Earl Benson, Legal Intern, for appellee.

## OPINION

BRETT, Judge:

Appellant, Sam J. Agee, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Washington County, Case No. CRF–75–386, of the crime of Burglary in the Second Degree, in violation of 21 O.S.1971, § 1435. Punishment was assessed at a term of four (4) years in the custody and control of the Department of Corrections of the State of Oklahoma. From said judgment and sentence the defendant has perfected this timely appeal.

The evidence as adduced at trial is as follows. George Hughes, Sheriff of Washington County, testified that on June 17, 1975, he and his men were in the Copan area at the north end of Washington County, conducting a search. Within this area was the home of Mr. and Mrs. Joe Allen Jeter.

Joe Allen Jeter testified that on the day in question, June 17, 1975, he, his wife and their child were at home until around 1:00 p. m., at which time they left to visit his parents. However, before leaving they locked all outer doors to the house and garage. Locked inside the garage was a green, 1972 Chevrolet Nova. Jeter stated that there were two sets of keys to this car in existence. One set of keys was in the possession of Mrs. Jeter and the other set of keys was left in a jewelry box in the master bedroom. He further claimed that no one had permission to enter the house.

Jeter testified that he and his wife traveled to Bartlesville after visiting his parents. In response to a telephone call, they proceeded to the police station in Coffeyville, Kansas. There he was asked to identify some clothes, guns and the clothing being worn by two black males. He testified that the items belonged to him and had been in his house a Copan before he left. He then proceeded to a local garage in Coffeyville to pick up his green Nova. In the car he observed two green caps and an unfinished package of Oreo cookies. He testified that these items had also been in his house prior to his departure at 1:00 p. m.

When he returned home, he testified, he discovered that someone had broken into his home. There was broken glass on the kitchen table. A further search revealed that the bedroom window in the southwest corner of the house had been broken and glass was on the floor. The set of keys to the Nova which had been kept in the jewelry box was missing. Jeter concluded by stating that he had never seen the defendant prior to seeing him at the police station in Coffeyville.

William Edwards testified that he was employed at the Copan office of Southwestern Bell Telephone Company. On the day in question he was working on a telephone cable located about one-half mile from the Jeter residence. At sometime between 1:00 and 1:30 p. m. he was walking from the cable to the road when he noticed a car, driven by a black male, coming down the road. He believed that there was another man in the car who ducked down to avoid being seen. He testified that he wrote down the license number, WS 4598. He also testified that when Officer Williams drove by shortly thereafter he related to him what he had witnessed.

Officer William M. Williams, Chief of Police of Dewey, Oklahoma, testified that he was driving in the area north of Copan when he was waved over by Edwards. After Edwards told him of the suspicious behavior of the driver of the green Nova, Williams called into the police station to check the ownership of the car. He then communicated this information to Sheriff Hughes.

Glenn Codding, Undersheriff of Washington County, testified that on the day in question he was ordered to the Jeter residence by Sheriff Hughes. Once there he proceeded to investigate, and found the garage door open, the door leading from the garage to the kitchen open, broken glass on the bedroom floor and a broken window in the bedroom which would allow anyone to crawl through. He also dusted for fingerprints and lifted several legible prints. However, no results on these prints was obtained from the Oklahoma State Bureau of Investigation Crime Lab.

Tommy E. Wilson, Undersheriff of Montgomery County, Kansas, testified next. At approximately 2:00 p. m. on June 17, 1975, he was on routine patrol in Coffeyville, Kansas, about 25 miles from Copan. He observed a vehicle fitting the description of a car reportedly stolen out of Oklahoma. He followed the car in which the only occupants were two black males. Wilson testified he was close enough to the automobile to identify the two men and their clothing.

After following the vehicle for a few blocks, the suspect vehicle pulled over and parked. The two occupants of the car left on foot. Wilson notified the other units in the area to be on the alert for these two men, and then checked the vehicle. In plain view there was a shotgun, an automatic rifle, a clothes basket and two green caps. Wilson was thereafter called to the bus station. He identified the two men in the custody of Officer Walt Chronister as being the two occupants of the car which he had been following. Wilson also stated that the defendant was wearing a green shirt with blue jeans and that the other man was wearing a yellow or gold shirt with checked pants.

Walter Chronister, a Police Officer at Coffeyville, Kansas, testified that he arrested Samuel Rayfael Burks and the defendant at the bus station, a short distance away from where they had left the car. He stated that both men had grass in their hair and "looked like they had been in a field or

something." In court Officer Chronister identified the defendant and some clothing as that which the defendant had been wearing when apprehended.

Helen Jeter, wife of Joe Allen Jeter, supported much of what Mr. Jeter had said. However, on some points her testimony was more thorough. Mrs. Jeter testified that she also identified the clothing at the police station as theirs, but unlike her husband she positively identified the defendant as one of the persons whom she had seen wearing this clothing. She also stated that one of the two men was wearing her husband's tennis shoes, which had been in their child's closet.

Mrs. Jeter testified as to the condition of the house upon their return from Coffeyville. She testified that the bedroom had been searched and that the drawers of the dresser in the master bedroom had been pulled out. She found the insignias which had been pulled off the green caps which were found in the car. Mrs. Jeter also testified as to the location of the stolen items within the house prior to the burglary. She placed everything within the house on the day in question.

Mrs. Jeter further testified that there were storm windows on the master bedroom windows. These windows fit over a ledge and one would have had to pry the window before they could be removed. Lifting the screens without prying would have been impossible. She testified that one of the storm windows had been taken off, the window broken in and the storm window put back. The storm window was up, but not over the ledge.

Don Stockton, a detective lieutenant with the Bartlesville Police Department, testified next. He stated that he had been summoned to Coffeyville to accept some materials for transportation to the Bartlesville evidence locker. He removed some clothing from two males for said transportation. He identified the defendant as the one who had been wearing blue jeans and a green knit shirt.

After his testimony, the State rested.

The defense waived the right to make an opening statement or present any evidence, and rested.

As his first assignment of error, defendant urges that the evidence presented by the State was insufficient to support the defendant's conviction, and that the State failed to prove the essential elements of burglary in the second degree. Defendant contends that "the evidence in its strongest light, was sufficient only to place him in possession of property allegedly taken and such evidence, in the absence of additional testimony, is insufficient to sustain a conviction for burglary."

■ While it is true that mere possession is insufficient to sustain a conviction, this Court is of the opinion that there was sufficient circumstantial evidence in this case to provide the additional testimony necessary. A criminal case may be proved circumstantially and circumstantial evidence need not exclude every hypothesis or negate every possibility other than guilt. *Logan v. State*, Okl.Cr., 493 P.2d 842 (1972), and *Luker v. State*, Okl.Cr., 552 P.2d 715 (1976).

■ The evidence presented by the State at trial established that there had been an unauthorized entry of the victim's home through a broken window. Several items of clothing and a car were taken. Less than 30 minutes after the break-in and within half a mile of the Jeter home, the car was seen by Mr. Edwards in the possession of two black males. The defendant, a black male, was seen leaving the car in Coffeyville, Kansas. A search by Undersheriff Wilson revealed several of the stolen items in the car. At the time of arrest, defendant was wearing clothing taken from the house. This Court said in *Luker v. State*, supra, at page 718, that:

". . . Where there is evidence, although entirely circumstantial, from which the jury may reasonably and logically find the defendant guilty, the weight, credibility and probative effect of such evidence is for the jury, and the Court of Criminal Appeals will not disturb the verdict for insufficiency of the evidence. See, *Matthews v. State*, Okl.

Cr., 530 P.2d 1044 (1975), and *Edwards v. State*, Okl.Cr., 508 P.2d 699 (1973). . . ."

This Court is not aware of any reason why it should not adhere to this announced policy. Therefore, we find no error, and this assignment of error is without merit.

As his second and final assignment of error, defendant contends that the trial court erred in admitting testimony from which the implication of other crimes or criminal acts could be drawn. Defendant claims that the testimony of Sheriff Hughes concerning the officers "making a search in the area of the house" and the testimony surrounding the reporting of the stolen vehicle creates the implication of a crime not related to the crime for which the defendant was on trial. This testimony implicates a crime which occurred the previous night.

This Court agrees with the numerous authorities cited by the defendant, and suggests a reading of *Songer v. State*, Okl.Cr., 464 P.2d 763 (1969), which states:

"Although a trial court should guard against the admission of testimony relating to separate and distinct offenses for which the defendant is not presently on trial, it is the rule of this Court, as announced in *Jones v. State*, Okl.Cr., 321 P.2d 432 (1958):

" 'The evidence of other crimes in order to be admissible must come within one of the well recognized exceptions to the rule. . . .' "

However, a thorough reading of the transcript by this Court has failed to reveal the type of evidence in this case which this rule is intended to exclude. In this case there is only an implication of another crime, an implication obvious only to the defense counsel. To extend the protection of this rule to every possible implication which might be conceived by defense counsel would be a severe stretching of the rule. This Court is not willing to extend the rule this far. Therefore, we find this assignment of error to be without merit.

For the above and foregoing reasons, we find the judgment and sentence appealed from should be, and the same hereby is, AFFIRMED.

BUSSEY, P. J., and BLISS, J., concur.