Jimmy Wesley TABOR, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–76–638.

Court of Criminal Appeals of Oklahoma.

July 31, 1978.

Harry Scoufos, Gerald Hunter, Sallisaw, for appellant.

Larry Derryberry, Atty. Gen., Douglas L. Combs, Asst. Atty. Gen., for appellee.

## OPINION

BRETT, Judge:

The appellant, Jimmy Wesley Tabor, hereinafter referred to as defendant, was charged, tried before a jury, and convicted in the District Court, Sequoyah County, Case No. CRF–75–232, of the offense of Murder in the Second Degree. The defendant was sentenced to a term of not less than ten (10) years to life imprisonment under the direction and control of the Department of Corrections of the State of Oklahoma. From said judgment and sentence the defendant has perfected his timely appeal to this Court.

Dr. William M. Wilson, Medical Examiner for Sequoyah County, testified that on May 3, 1975, he examined the body of William "Cooter" Keck at a location on Highway 59 in Sequoyah County. The cause of death was a shotgun blast to the chest. Sequoyah County Deputy Sheriff Jim Rinehart testified that he investigated the death of Mr. Keck on May 3, 1975, and observed the deceased lying in the front seat of a vehicle at the side of a county road approximately one-half mile south of Sallisaw. Other law enforcement officers then testified concerning their investigation of the scene.

Violet Clark testified that she ran Peggy's Cafe in Sallisaw and that on May 3, 1975, the deceased was in the cafe and left between 3:00 and 4:00 p. m. Olta Ledford testified that she was employed at a cafe called Mr. Burritos and that she saw the deceased there at approximately 4:30 p. m. on the day in question. Sally Ledford, daughter of Olta Ledford, testified that she was in Mr. Burritos at about 4:30 p. m. when Keck came in to get a sandwich. She

noticed that he appeared nervous and watched the door. She also observed two or three persons outside in a car which had nearly struck Keck before he came into the restaurant.

Marsha Whitaker testified that on the day in question, sometime between 1:30 and 3:00 p. m., she observed Keck in front of Peggy's Cafe and talked to him for a few minutes. She also observed the defendant and two other persons in front of a snooker parlor approximately one block away.

The State then called Fred Hodges who testified that about 11:00 a. m. on the date in question he and Danny Hodges, a cousin now deceased, met the defendant at a bar in Sallisaw. They left the bar in Danny Hodges' car and drove to another bar near Muldrow. They subsequently returned to Peggy's Cafe to eat where they saw Keck. Danny Hodges said, "this is the time to get him because he sent me to the penitentiary." The defendant then asked, "do you want to get him now?" but Danny Hodges suggested that they wait. When Keck left, Danny and the defendant followed and got into Danny's car. The witness paid the check, got in the back seat, and they followed Keck. Danny was driving and began ramming Keck's car from behind. Keck stopped and went into a building, and the defendant got into Keck's car. When Keck returned, Danny and the witness followed Keck's car to some strip pits. The witness, still in the back seat, asked Danny what they were going to do. Danny responded that they were going to kill Keck. The witness testified that he tried to talk him out of it.

Fred Hodges testified that the defendant dragged Keck from his car and hit him with a bottle. Danny Hodges got out of his car with a shotgun, and he and the defendant began hitting Keck. They were drinking from a bottle and throwing the gun back and forth in a game to see who would shoot Keck. The witness stated that he remained in the back seat of the vehicle and that he laid down on the floor because he did not want to see anyone killed. However, he said the last person he saw with the shot-

gun was the defendant. He then heard a shot, after which Danny and the defendant came back to the car. Danny threw the gun into the back, and they then took the witness to his car.

On cross-examination, Fred Hodges testified that he originally gave a statement to the District Attorney one week after the killing, but later denied any knowledge of it. After his arrest as a material witness some nine months later, he made a statement and agreed to testify. He further related that the District Attorney made no promises but did tell him that he could be prosecuted for withholding evidence. He further stated that the District Attorney once told him that he could be an accomplice or an accessory, although he could not remember which. On redirect, the witness stated that he made the first statement, denying any knowledge of the incident, because Danny Hodges and the defendant had threatened to kill him if he did not keep his mouth shut.

Linda Callahan testified that she worked for the District Attorney of Sequoyah County and that Cooter Keck had testified at a previous criminal trial wherein Danny Hodges was the defendant.

Phyllis Kupka testified that she was employed as a police officer in Clinton, Oklahoma, and that on January 4, 1976, the defendant was arrested and jailed in Clinton on the instant murder charge. She described the interior of the jail and the location of the two adjacent security cells. She further stated that the defendant was in one security cell and a Mr. Blankenship in the other. There was a solid partition between the cells, but each cell had open bar work on the front.

Ralph D. Blankenship testified that he was incarcerated in the Clinton jail on January 4, 1976, when the person in the adjoining cell tapped on the wall and asked what he was "in for." Blankenship explained, and then the other man stated that he was in for "murder one cause I blowed an old boy's head off." Blankenship never saw the man in the adjoining cell, nor did he initiate the conversation. He further stat-

ed that the man in the other cell mentioned the charge was out of Sequoyah County. The State then rested.

For the defense, Rick Poindexter testified that he worked at a filling station near Sallisaw and saw the deceased, Cooter Keck, on the date in question between 4:00 and 5:00 p. m. He further stated that he saw Keck drive off and did not observe anyone following him or anyone in the vehicle with him. Lelis Smith, Sallisaw police officer, testified that on the date in question he talked with Keck near Peggy's Cafe between 4:00 and 5:00 p. m. He then observed the deceased drive off and did not notice any car following him.

Jeannie Fields testified that the defendant was asleep on her couch throughout the afternoon of the day in question and that he did not leave until 6:00 or 7:30 p. m., when he drove her and some friends to a movie in a pickup.

Roger Dale Petrie testified that on the day in question he observed the defendant at approximately 6:45 p. m. driving a pickup with three girls in it.

Gary Brumbles testified that on the day in question he saw the defendant at Guys and Dolls, an amusement center in Sallisaw at approximately 7:30 p. m. The defense then rested.

On rebuttal, Deputy Sheriff Rinehart testified that he was present when Fred Hodges made a statement concerning the homicide, and that nothing was said to Hodges about being charged as an accomplice.

The defendant's first assignment of error urges that error was committed when the magistrate overruled the defendant's demurrer to the evidence and motion to quash and set aside the information at the conclusion of the State's evidence at the preliminary hearing. In support of his assignment, the defendant asserts that the only evidence presented by the State at the preliminary hearing tending to connect the defendant with the commission of the crime was the testimony of Fred Hodges, an accomplice. The defendant further argues that the accomplice's testimony was not

corroborated and that the charge should have been dismissed at the preliminary hearing stage. We disagree.

 In *State v. Wofford,* Okl.Cr., 549 P.2d 823 (1976), we held that the uncorroborated testimony of an accomplice will not support the finding of probable cause at a preliminary examination. However, in the instant case the evidence presented at the preliminary hearing and the trial was insufficient to require a judicial finding that Fred Hodges was an accomplice as a matter of law. It was, therefore, left to the magistrate to determine as a matter of fact whether Hodges was an accomplice when testimony needed corroboration. The magistrate apparently determined he was not an accomplice.

 When there is competent evidence in the record from which the magistrate as a trier of fact could reasonably conclude that there was probable cause to believe that a crime had been committed and probable cause to believe that the defendant committed said crime, the reviewing court will not interfere with the determination of the finder of fact. See, *Campbell v. State,* Okl. Cr., 546 P.2d 276 (1976), and *Turner v. State,* Okl.Cr., 549 P.2d 1346 (1976).

The defendant's second and third assignments of error urge that the trial court erred in not instructing the jury that the witness Fred Hodges was an accomplice as a matter of law and further urges that the testimony of Fred Hodges, an accomplice, was not sufficiently corroborated at trial. Again, we disagree.

 The evidence presented at the preliminary hearing and at the trial do not warrant an instruction that the witness was an accomplice as a matter of law. Where facts as to whether the witness is or is not an accomplice are reasonably susceptible to either interpretation, the issue is for the jury to determine under proper instruction. *McCormick v. State,* Okl.Cr., 464 P.2d 942 (1969). The record reveals that the jury was properly instructed as to its duty to determine whether or not Fred Hodges was an accomplice. A proper instruction con-

cerning the necessary corroboration of accomplice testimony was also given.

■ Assuming the jury found as trier of fact that Fred Hodges was an accomplice, the testimony of Ralph Blankenship concerning the defendant's admission that he had "blowed an old boy's head off" in Sallisaw was adequate corroboration. Both assignments of error are meritless.

Defendant's next assignment of error contends that the trial court erred in allowing the testimony of the witness Blankenship to be transcribed and read to the jury during its deliberation after the jury foreman requested same.

The transcript reflects that the following occurred in open court:

"JUDGE ROGERS: . . . Ladies and Gentlemen of the Jury, the court has had the testimony of the witness, Ralph D. Blankenship, transcribed by the reporter in the intervening time since you have requested it and I will inquire of the foreman of the jury, does the jury still desire that this testimony be read to the jury?

"FOREMAN: We do.

"JUDGE ROGERS: Is there a conflict concerning this testimony among the jurors, without stating what the conflict is or any—

"FOREMAN: There is not a conflict as such. We would like to hear again the exact wording of that testimony.

"JUDGE ROGERS: But, is there some conflict as to what that exact wording is?

"FOREMAN: Well,

"JUDGE ROGERS: Between the jurors, I mean some of the jurors?

"FOREMAN: I am hung up on your word, conflict. I don't know whether it could be described as a conflict or not. *There was some uncertainty as to the exact wording.* I will put it that way." (Emphasis added)

The applicable Oklahoma statute, 22 O.S. 1971, § 894, reads as follows:

"After the jury have retired for deliberation, if there be a disagreement between them as to any part of the testimony or if they desire to be informed on a point of law arising in the cause, they must require the officer to conduct them into court. Upon their being brought into court, the information required must be given in the presence of, or after notice to the county attorney and the defendant or his counsel, or after they have been called."

■ In the instant case, the jury foreman advised the trial court that there was uncertainty as to the exact wording of the Blankenship testimony and requested to have the testimony read to them. Defense counsel argues that there was no "disagreement" between the members of the jury panel and therefore the trial court had no authority to allow the reading of the requested testimony.

In *Jones v. State,* Okl.Cr., 456 P.2d 610, 612 (1969), this Court held as follows:

"We interpret the mandatory aspect of 22 O.S.A. § 894 to be that which provides for the return of the jury to the courtroom, and for the notification of the parties to the trial that the jury is being returned for additional information, or instruction. The termination of whether or not the jury's request is required lies within the judicial discretion of the trial judge. . . ." (Citation omitted)

It is our opinion that the trial court was within its sound discretion in determining that the jury was in disagreement since they were uncertain as to the exact wording of the testimony of witness Blankenship. Since the trial court did not abuse its discretion there is no error.

■ Defendant's next assignment of error argues that the trial court committed error in accepting the verdict of the jury when the verdict was not in proper form. The record reveals that folded with the verdict form was a note from the jury which read as follows:

"According to the instructions of Instruction sheet # 11, it was the opinion of the jury that the witness, Fred E. [Hodges], was an accomplice to this crime however the evidence, discounting the testimony

of Fred E. [Hodges], was sufficient against Jimmy Wesley Tabor."

The defendant argues that the jury was confused as to its duties in arriving at a verdict and, therefore, the trial court should have directed them to reconsider their decision. We disagree.

■ The verdict was clear, certain, unambiguous, and responsive to the issues joined by the information and plea of the defendant. The note did not indicate that the jury was confused by the instructions. It supports the verdict and shows that the jury indeed understood the accomplice instruction submitted to it by the trial court. The note, if considered a part of the verdict, is mere surplusage. *Riddle v. State,* Okl. Cr., 374 P.2d 634 (1962).

■ It should also be noted that the defendant fails to cite authority in support of his contention. This Court has often held that it is necessary for counsel for defendant not only to assert error but to support his contentions by both arguments and citations of authority, and where this is not done and it is apparent that the defendant has been deprived of no fundamental right, this Court will not search the books for authority to support the mere assertion that the trial court erred. *Fryar v. State,* Okl. Cr., 385 P.2d 818 (1963). For the reasons set out above this assignment of error is without merit.

■ The defendant's last two assignments of error contend that the cumulative errors by the trial court prejudiced the rights of the defendant and denied him a fair and impartial trial. However, as stated in *Haney v. State,* Okl.Cr., 503 P.2d 909 (1972), if the previous propositions of error are without merit, it follows that when they are considered collectively they are also without merit.

It is therefore our opinion that the defendant received a fair and impartial trial before a jury, that no substantial right of the defendant was prejudiced, and that the judgment and sentence appealed from should be, and the same is, hereby, *AFFIRMED.*

BUSSEY, P. J., concurs specially.

CORNISH, J., concurs.

BUSSEY, Presiding Judge, concurring:

I wish only to observe that defendant's contention is his first assignment of error, that it is necessary for the State to corroborate the testimony of an accomplice during the preliminary examination was rejected in *Bennett v. State,* Okl.Cr., 570 P.2d 345 (1977), where we expressly overruled *State v. Wofford,* Okl.Cr., 549 P.2d 823 (1976).