**J.R. "Silas" JONES, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–81–159.**

Court of Criminal Appeals of Oklahoma.

Nov. 11, 1982.

Anthony Berry, Durant, for appellant.

Jan Eric Cartwright, Atty. Gen., State of Okl., Dena L. Bates, Asst. Atty. Gen., State of Okl., Oklahoma City, for appellee.

**636**

## OPINION

BUSSEY, Judge:

J.R. "Silas" Jones was convicted of Murder in the First Degree, in the District Court of Bryan County, Case No. CRF–77–126, pursuant to 21 O.S.1981, § 701.7, and was sentenced to life imprisonment.

In his only assignment of error defendant alleges that his accomplices' testimony was not sufficiently corroborated and that the other evidence against him was insufficient to sustain his conviction.

On the evening of March 1 and in the early morning hours of March 2, the bullet ridden bodies of Junior Metcalf and Ernest Fielder were found at their fishing camp, known as Platter Flats, by Lake Texhoma. Tom Jordan, OSBI Firearms Expert, testified that he was able to conclusively identify projectiles, recovered at the scene, as being fired from four separate guns which were later recovered from Lake Texhoma.

The State's witness Roy Leeds testified that on the date of the crime, he was an employee of the defendant and that on the afternoon of that day, defendant told him to "come on, we will use your car." Leeds testified that defendant, accompanied by Gene Sexton, Charles Maines and Pete Kay, directed him to drive to a vacant house on a country road where all four men armed with guns, walked in the direction of Platter Flats. When the four returned, two (2) hours later, Leeds helped dispose of the guns into Lake Texhoma and was told that they had killed two men.

The State also called witnesses Gene Sexton and Charles Maines who substantiated Leed's testimony and further testified that they, accompanied by defendant and Pete Kay, had walked into the victims' camp, awaited the victims' return, and opened fire on the victims as they drove into camp. After the initial burst of gunfire defendant said "We've got to go back they're not dead," and defendant and witness Maines returned to the scene followed by further gunfire.

Upon submission of the evidence, the trial court ruled as a matter of law that witnesses Maines and Sexton were accomplices and properly instructed [1] the jury that their testimony must be corroborated. However, the trial court refused to rule that witness Leeds was defendant's accomplice, as a matter of law, and instructed [2] the jury that they were to determine whether or not

1. Instruction Number 16 reads as follows:

   You are instructed that a conviction cannot be had upon the testimony of an accomplice alone, unless he has been corroborated by such other evidence as tends to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof. In this connection you are instructed that an accomplice is one culpably implicated in the commission of the crime of which the defendant is accused; one who knowingly and voluntarily cooperates, aids or assists in the commission of the crime. The corroboration required must be the proof of substantial facts tending to incriminate the accused aside from and without the aid of the testimony of the accomplice, but the corroborating evidence need not necessarily connect the defendant directly with the offense; it is sufficient if it tends to do so. In this connection you are told as a matter of law that, under the evidence, the witnesses, Gene Sexton and Charles Maines who have testified on behalf of the State are accomplices to the commission of the crime charged against the defend-
   ant in this case, within the definition of 'accomplice' as given you in this instruction. Instruction Number 18 reads as follows:
   You are instructed that under all the evidence in this case the witness, Gene Sexton and the witness, Charles Maines, are accomplices, as a matter of law, and for that reason you cannot convict the defendant upon the testimony of the said Gene Sexton and Charles Maines, unless you find in the case that their testimony has been corroborated by other evidence in the case, independent of their testimony, which tends to connect the defendant with the alleged commission of the crime charged.

2. Instruction Number 20 reads as follows:

   As to the witness, Roy Lee Leeds, you are instructed that you are to determine from the foregoing instructions whether or not he is an accomplice, or an accessory to the crime of which the defendant herein stands charged, and if you determine that he is an accomplice, then you are instructed that you cannot convict the defendant upon the testimony of said witness, unless you find such testimony is corroborated as provided in the foregoing instructions.

Leeds was an accomplice, or an accessory to the crime of which the defendant was charged.

The evidence presented at trial did not warrant an instruction that witness Leeds was an accomplice as a matter of law. Leeds denied any knowledge of the plans to kill the two victims and testified that he thought the four men were going to "shoot up someone's house," or "burn someone's house down." Accomplices Maines and Sexton testified that Leeds was not present when the murders were planned and that the plan was not discussed when Leeds drove the four men to the site near the scene of the crime. Where facts as to whether the witness is or is not an accomplice are reasonably susceptible to either interpretation, the issue is for the jury to determine under proper instruction. *McCormick v. State*, 464 P.2d 942 (Okl.Cr. 1969). *Tabor v. State*, 582 P.2d 1323 (Okl. Cr.1978). We find that this question was properly placed before the jury for determination and that witness Leeds' testimony was corroborative of the accomplices' testimony.

Further corroboration of the accomplices testimony was provided by the testimony of Guy Scott. Scott testified that in the month prior to the murders, the defendant had personally offered him $500.00 to locate the two victims. This testimony corroborated Leeds testimony of defendant's motive to "get even" because one of the victims had shot off the defendant's chin in an altercation prior to the murders. Scott's testimony also had corroborative value in that witness Sexton testified that defendant had hired a plane, searched the Lake Texhoma area and found the victims' fishing camp on the day prior to the murders. There was sufficient independent evidence, corroborative of the accomplices', to connect the defendant to the commission of the crime. *Frye v. State*, 606 P.2d 599 (Okl.Cr. 1980). Therefore defendant's assignment of error is without merit.

The judgment and sentence is AFFIRMED.

BRETT, P.J., and CORNISH, J., concur.