## 40276. BLANKENSHIP v. THE STATE.

CLARKE, Justice.

This is the second appearance of this death penalty case. In its first appearance, the defendant's convictions for the offenses of murder, rape and aggravated sodomy were affirmed. The conviction for burglary was reversed because we found it to have merged with the felony murder conviction. Because of error under Witherspoon v.

Illinois, 391 U. S. 510 (88 SC 1770, 20 LE2d 776) (1968), the death penalty was set aside and the case remanded for retrial on the issue of sentence. *Blankenship v. State,* 247 Ga. 590 (277 SE2d 505) (1981). On retrial, the defendant was again sentenced to death. The case is here on direct appeal and for mandatory review of the sentence. The issue here is the scope of evidence admissible in mitigation and whether the limitations imposed on Blankenship were permissible. We find he was impermissibly restricted; therefore, we reverse.

Evidence presented at the original trial was summarized in our prior opinion. Briefly, it showed that the victim, a seventy-eight-year-old woman in ill health, was raped and beaten by an intruder and subsequently died from heart failure brought on by the trauma. In our review of the evidence, we noted the unexplained presence of blood, which was neither the victim's nor the defendant's, in the fingernail scrapings taken from the victim's left hand. We noted also that a segment of Negroid hair was discovered in combings taken from the victim's pubic hair, for the presence of which a plausible, though not conclusive, explanation was offered by the state. We concluded, from our review of the evidence, including footprint and fingerprint evidence and the defendant's confession, that the evidence was sufficient to support the convictions. However, in our review of the evidence, it was not necessary to determine, nor did we, that the evidence left no doubt as to the possible involvement of a third party.

The errors committed during the retrial had their genesis in, and are illustrated by, the following colloquy which occurred just prior to the presentation of the evidence:

"MR. HENDRIX: [for the defendant] Your Honor please, at some point that is convenient with the Court, we would like Your Honor to examine the file of the District Attorney only to determine whether or not there is any matter contained in his file with regard to the identification and presence of the Negroid hair findings that were found in the combing of the body —

"THE COURT: That would go to the guilt or innocence of the defendant.

"MR. HENDRIX: Your Honor please, we would respectfully submit that any matters that could possibly show the presence of any individual other than the defendant must be considered in the —

"THE COURT: I disagree with you entirely. All of that could have been presented to the Supreme Court of Georgia and got a ruling from them on it. I don't know what the evidence was as to that. But apparently from some later statement by somebody that that could have gotten there by being handled by a Negro at the hospital, as I recall.

"MR. KIRKLAND: [for the state] There was testimony, sir, that there was an attendant —

"THE COURT: I mean that's just to show that somebody else had done that and not this defendant. But that didn't hold water, as we know. The jury didn't accept that. They found him guilty.

"MR. HENDRIX: Yes, sir, that's for sure.

"THE COURT: And I'm not going to retry this again.

"MR. HENDRIX: Your Honor, we are not asking to go into that matter —

"THE COURT: It seems to me that you are asking to retry this case again, and I've said ten times I'm not going to do it. Now, any evidence you have as to mitigation of punishment, of course you'll have a right to that. But all this other stuff has nothing to do with it.

"MR. HENDRIX: Your Honor, if there is any evidence to show that someone else could have participated with the defendant, then certainly that's in mitigation insofar as the death penalty —

"THE COURT: There was no evidence that anybody participated in this thing, other than that one hair, and this defendant.

. . .

"MR. HENDRIX: . . . [A]t the trial that we are relying on now as to guilt, there is also testimony which indicates that originally there existed more findings of Negroid hair than that which was presented to the expert witness the Court authorized the defendant to hire. . . . Therefore, the number becomes important.

"THE COURT: I don't think it does at all. Suppose somebody else was involved in this thing. He's just as guilty as that person would be if he aided and abetted, or if they aided and abetted him. That has nothing to do with the guilt or innocence that we have to determine right now. You see what I mean? Suppose fifteen other people had been involved in this thing. How does that relieve him of his responsibility and having already been found guilty of murder?"

During the presentation of evidence, the state was allowed to present evidence tending to prove that the defendant had entered the victim's apartment, alone, and had beaten and raped her. The defendant's cross-examination of the state's witnesses, however, was in several instances curtailed. Moreover, although the defendant was allowed to testify to his version of the events, testimony which would have tended to corroborate his testimony that a third person was present was excluded. The trial court reasoned that since the defendant had been convicted of rape and murder by a previous jury, the circumstances of the offense and whether someone else had been involved were matters irrelevant to this jury's decision as to sentence.

We conclude that the trial court's view of the scope of evidence admissible in mitigation was too narrow. In one of the earliest cases decided under our 1973 law, we held: "The statute is clear that the pre-sentence hearing is for additional evidence and in no way excludes from consideration on sentence the matters heard on the issue of guilt or innocence." *Eberheart v. State,* 232 Ga. 247, 253-254 (206 SE2d 12) (1974). Later, we held that, when guilt and sentence are determined by the same jury, as is usually the case, the jury *must* be informed that it can consider all the facts and circumstances of the case as presented during *both* phases of the trial. *Spivey v. State,* 241 Ga. 477, 481 (246 SE2d 288) (1978).

Indeed, a reading of the pronouncements of the United States Supreme Court appears to impart to the thesis of *Eberheart* a Constitutional tenure. In Lockett v. Ohio, 438 U. S. 586 (98 SC 2954, 57 LE2d 973) (1978), the plurality opinion observed: "We . . . conclude that the Eighth and Fourteenth Amendments require that the sentencer, in all but the rarest kind of capital case, not be precluded from considering, *as a mitigating factor,* any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." 438 U. S. at 604. (Emphasis in original.) The plurality in Lockett was adopted by the majority of the United States Supreme Court in Eddings v. Oklahoma, 455 U. S. 104 (102 SC 869, 71 LE2d 1) (1982), and we perceive it to state the scope of the United States Constitution relative to capital cases. Lockett and Eddings impose a severe limitation upon the trial court's authority to exclude evidence offered by defendants in the sentencing phase of a death penalty case.

When the sentencing phase of a death penalty case is retried by a jury other than the one which determined guilt, evidence presented by the defense, as well as evidence presented by the state, may not be excluded on the ground that it would only "go to the guilt or innocence of the defendant." In essence, although the resentencing trial will have no effect on any previous convictions, the parties are entitled to offer evidence relating to circumstances of the crime.

In view of our disposition of the case, we need not address the defendant's remaining enumerations of error. This case is remanded to the trial court for further proceedings not inconsistent with this opinion.

*Judgment reversed. All the Justices concur.*

DECIDED NOVEMBER 8, 1983.

*Penny J. Haas, John W. Hendrix,* for appellant.

*Spencer Lawton, District Attorney, David T. Lock, Assistant District Attorney, Michael J. Bowers, Attorney General, Paula K. Smith, Staff Assistant Attorney General,* for appellee.