Billy Gene STOUT, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–80–470.

Court of Criminal Appeals of Oklahoma.

Oct. 24, 1984.

Rehearing Denied Jan. 22, 1985.

199 Okl. 161, 184 P.2d 976 (1947).

Amos E. Black, III, Anadarko, for appellant.

Michael C. Turpen, Atty. Gen., John O. Walton, Asst. Atty. Gen., Deputy Chief Crim. Div., Oklahoma City, for appellee.

OPINION

BRETT, Judge:

Appellant, Billy Gene Stout, was charged with, tried for, and convicted of two counts of Murder in the First Degree, pursuant to 21 O.S.1981, § 701.7(A), in Case No. CRF–77–156 in the District Court of Caddo County, State of Oklahoma. Upon recommendation of the jury, appellant was sentenced to death on each count. From said judgments and sentences, appellant has perfected this appeal. We affirm.

Although the brief submitted by counsel for the appellant is almost four times as long as permitted by Rule 3.5(C) of the Rules of the Court of Criminal Appeals, Title 22 O.S.1981, Ch. 18, App., we allowed it to be filed. We have carefully examined each argument presented in the brief but, due to its length, will not address the more frivolous subpropositions of error.

I.

Appellant's first assignment of error is two-fold. He contends that the evidence adduced at preliminary hearing was insufficient to bind him over for trial and that his motion for directed verdict should have been granted at the end of the State's case. As the record before us does not contain the transcript of the preliminary hearing, we are unable to consider his first contention. *See Hanna v. State,* 560 P.2d 985 (Okl.Cr.1977). In regard to his second contention, we cannot agree.

This court has consistently held that the trial court should overrule a demurrer when there is any competent evidence to support the allegations in the information. *Renfro v. State,* 607 P.2d 703 (Okl.Cr.1980). Furthermore, once the appellant presents evidence in his own defense, the demurrer is waived, and the question of sufficiency of the evidence is determined by an exami-

nation of the entire record viewing the evidence in the light most favorable to the State. *Phillips v. State*, 641 P.2d 556 (Okl. Cr.1982).

The following was adduced at trial. The victims in this case, Opal and Elmo Gandy, were appellant's sister and brother-in-law with whom he had previously lived. The Gandys were last seen alive by their son Lawdis Gandy and by a store clerk who sold them dog food at approximately 1:30 a.m. on July 18, 1979. A few hours later, the Gandys were beaten to death with a pipe-like instrument in the bedroom of their home in Anadarko. The time of death was estimated to be 5:00 a.m. Several neighbors testified that that was about the time that they had heard screams followed by a pounding noise.

A witness who had chatted with appellant at the bus station in Chickasha on July 17, 1979, testified that appellant told her he was taking the bus to Anadarko to visit the Gandys. Appellant was seen near the Gandy residence in the late afternoon and early evening hours of July 17, 1979. On the morning of the homicides, before the bodies were discovered, he was seen in the Gandys' yard at 8:30 a.m., according to one witness, and between 8:00 and 10:00 a.m., according to another. At approximately 9:00 a.m., appellant purchased a new pair of shoes at a store in Chickasha, which is eighteen miles from Anadarko. The car belonging to the Gandys but missing from their residence after the homicides was found abandoned in a parking lot one and one-half blocks from the shoe store and near the bus station where appellant bought a ticket to Oklahoma City.

When appellant was arrested in Ardmore on July 19, 1979, he told the police and O.S.B.I. agents that he could not remember where he had been or what he had done in the last three days. Accountings of the events he could remember varied from interview to interview. At first, appellant denied having been in Anadarko at all. In a subsequent interview he admitted that he had been in the Gandys' home the morning they were murdered, but at trial he denied

making this admission. During one conversation, appellant remembered having heard a dog bark and remarked, "Oh, my God, that could of [sic] been George." "George" was the name of the Gandys' dog. An analysis of an ink pen appellant was carrying at the time of his arrest showed the presence of human blood.

A couple of witnesses testified that appellant harbored ill feelings toward his brother-in-law. Appellant had told one witness that had he not moved from Anadarko, he would have killed Elmo Gandy.

Although Elmo Gandy usually carried a large sum of cash, no money was found in the victims' home. When appellant was arrested, he was carrying over four hundred dollars in cash.

We find that this evidence was sufficient for the jury to conclude that appellant unlawfully and with malice aforethought caused the death of Opal and Elmo Gandy. Accordingly, the trial court did not err in overruling the motion for directed verdict, and the evidence was sufficient to justify a verdict of guilty.

## II.

■ Appellant's next argument is that the trial court erred in failing to suppress admissions and physical evidence obtained as a result of a warrantless arrest that appellant believes was made without probable cause. He maintains that because the arrest was illegal, the fruits thereof should have been suppressed. We agree, however, with the trial court's ruling that appellant's arrest was supported by probable cause.

At the time of arrest—stipulated at the Jackson-Denno hearing to be when the Ardmore police officer took Stout to the police station for questioning—the investigating O.S.B.I. agent who requested that appellant be picked up knew that Opal and Elmo Gandy had been murdered in the early morning hours of July 18, 1979, that appellant had traveled to Anadarko on the seventeenth to see the victims, and that appellant had in fact been at or near the Gandy

residence the afternoon before and the morning after the homicides. Further, the car missing from the victims' residence was recovered in Chickasha one and one-half blocks away from a shoe store where appellant purchased a new pair of shoes the morning of the homicide, and appellant bought a bus ticket to Oklahoma City at the Chickasha bus station that same morning. That appellant was Opal Gandy's brother and that appellant had not reported the murders to the police were also known.

■ If a police officer arrests a person without a warrant, the arrest is not unlawful if the officer, upon his own knowledge or upon facts communicated to him by others, has reasonable cause to believe the person has committed a felony. *Satterlee v. State*, 549 P.2d 104 (Okl.Cr.1976). We find that the facts within the knowledge of the officer were sufficient to warrant a prudent man in believing that the appellant had committed an offense. Thus, the officer had probable cause to make the arrest. *See Greene v. State*, 508 P.2d 1095 (Okl.Cr. 1973).

■ Having determined that the arrest was not illegal, we now turn to appellant's assertion that he did not knowingly and intelligently waive his right to remain silent and his right to counsel. Appellant makes numerous allegations under this proposition of error in an attempt to show that his rights were violated. We have carefully examined the record and find no merit in any of his contentions. Appellant's own testimony elicited at trial by defense counsel showed the voluntary nature of his statements. Each time appellant was questioned by officers, he was advised of his *Miranda* rights. He stated on every occasion that he understood those rights and wished to talk to the officers. Appellant testified that he was advised that he had a right to a lawyer but that he did not want one, that he wanted to keep on talking. He also admitted that he knew he was being questioned as a suspect, but that he requested that the O.S.B.I. agents return "time and time again" to talk to him. We are unable to find any violation of appellant's rights in the record and conclude that his statements were voluntarily made and therefore properly admitted at trial.

### III.

That the trial court erred in admitting appellant's uncorroborated confessions and statements is appellant's third assignment of error. Appellant relies on *Smith v. United States*, 348 U.S. 147, 75 S.Ct. 194, 99 L.Ed. 192 (1954) and *Opper v. United States*, 348 U.S. 84, 75 S.Ct. 158, 99 L.Ed. 101 (1954) for the proposition that a defendant's confession must be corroborated in order to introduce the confession against the defendant and convict the defendant on the basis of that confession. Appellant argues that sufficient corroboration was lacking in the case at bar.

■ Initially we note that no confession was made or introduced in this case. Appellant did, however, make certain admissions which may have meant the difference between acquittal and conviction. An admission which assumes such importance should not go uncorroborated. *See Smith*, 348 U.S. 147, 75 S.Ct. 194, 99 L.Ed. 192.

■ The corroboration rule originally required independent proof in serious crimes of violence that *someone* had indeed inflicted the violence, the so-called corpus delicti. Once the existence of the crime was established, however, the guilt of the accused could be based on his otherwise uncorroborated confession. *Id.* A somewhat relaxed version of this rule was pronounced in *Opper v. United States*, 348 U.S. 84, 75 S.Ct. 158, 99 L.Ed. 101 and adopted by this Court in *Jones v. State*, 555 P.2d 63 (Okl.Cr.1976). Our rule is that once substantial evidence of the corpus delicti is introduced, the confession of the defendant is admissible, provided that together they furnish the basis for a finding of the corpus delicti and the guilt of the defendant, both beyond a reasonable doubt. In the case before us, the existence of the crime and the defendant's guilt both were proved beyond a reasonable doubt by the

evidence in conjunction with the extrajudicial admissions; thus, the admissions were properly admitted at trial.

## IV.

Appellant's fourth assignment of error is likewise without merit. There he challenges the trial court's finding that appellant waived the right to counsel prior to his admissions. When appellant first asked to speak to a certain lawyer, the investigators told him that they would contact the lawyer for him but their questioning would have to cease.[1] Appellant then withdrew his request for an attorney and requested that the officers return the next day so he could talk further. The officers returned the next day as requested and again advised Stout of his constitutional rights. Appellant said he still wanted to speak to them.

Once an accused expresses his desire to have counsel, the interrogation must end until counsel has been made available to him *unless the accused initiates further communication with the police.* *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). As appellant retracted the request for an attorney and waived the right to counsel, no right was violated and the trial court properly admitted the statements.

## V.

Appellant's next assignment of error concerns certain remarks made by the prosecutor that appellant believes constituted comments on his right to remain silent. Appellant alleges that the trial court erred in failing to sustain his motion for a new trial.

Two of the statements of which appellant complains were made during voir dire. Defense counsel timely objected and moved for a mistrial in both instances. The trial court overruled the first objection but sustained the second. Nevertheless, the motion for a mistrial was denied. We agree that the comments were improper;

however, our opinion is that a new trial was not and is not warranted. This Court was faced with similar situations in *Holdge v. State*, 586 P.2d 744 (Okl.Cr.1978) and *Young v. City of Tulsa*, 563 P.2d 156 (Okl. Cr.1977). Our holdings in those cases are applicable to the case at bar: the defendant chose to testify in his own behalf and there is no reasonable possibility that the comment would have contributed to the conviction; thus, the error was harmless.

After carefully reading in context the five other statements alleged as error, we find that three of them in no way commented either directly or indirectly upon the defendant's exercise of his right to remain silent. The two remaining remarks follow:

> The Judge tells you in this Instruction all of the legal procedures that you always have to go through about advising people of their rights. You noticed Mr. Stout was advised of his rights four (4) different times; twice on writing that you've got here before you, if you want to look at those Miranda Warning forms, and then twice orally by Mr. Puckett. And he was advised of his rights and Mr. Stout wanted to talk to them. And Mr. Stout couldn't decide how far to go: 'I want to talk to Lawdis before I make my decision.' What decision, ladies and gentlement, was there to make? Of course, Mr. Stout denies the statement now .. he didn't say it. Mr. Puckett's—you know, is lying.

> &ast; &ast; &ast; &ast; &ast; &ast;

> But to begin with, you stop and use—you have to believe some of the things that Billy Stout are telling you in regard to after the interviews with the O.S.B.I., you have to believe the last statement he gave you from the stand that's what you've got to believe. The other statements, the—each of them began to move and move and move and he kept putting himself, you know, he's not in town and he puts himself in town. He puts him-

---

1. The brief also alleges that appellant would not have been allowed to see his nephew, son of the victims, or the minister he had requested to see

had he insisted on seeing an attorney. This allegation is wholly without support in the record.

self step-by-step .. he gets closer and closer to the Gandy house. The man was trying .. he was trying to make his decision, he was—on July the 20th and 21st when Tom Puckett talked to him. And he moved until—that was the last time the O.S.B.I. Agents talked to him was October—pardon me, July the 21st, and that's as far as he moved.

The above quotations were part of the prosecutor's closing argument. This Court was faced with similar closing remarks in *Gregg v. State,* 662 P.2d 1385 (Okl.Cr.1983). Concluding that no error occurred in that case, we stated:

We agree with the appellant that it is improper for any comment to be made at trial concerning the silence of a defendant following a *Miranda* warning. *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976); *State v. Neal,* 604 P.2d 145 (Okl.Cr.1980). However, the Supreme Court limited *Doyle* in *Anderson v. Charles,* 447 U.S. 404, 100 S.Ct. 2180, 65 L.Ed.2d 222 (1980) wherein the Court stated:

... questioning [that inquires into prior inconsistent statements] makes no unfair use of silence because a defendant who voluntarily speaks after receiving *Miranda* warnings has not been induced to remain silent.

It is our determination that the prosecutor's comments fall more nearly within the rule of *Anderson* than of *Doyle.* As in *Anderson,* the appellant here waived his right to remain silent and voluntarily responded to police questioning. Further, the prosecutor's questions were not meant to draw meaning from the silence itself but rather were an attempt to refute the veracity of the defendant's story.

In finding that *Doyle* did not apply to the facts in *Anderson,* the U.S. Supreme Court stated:

Each of the two inconsistent descriptions of events may be said to involve 'silence' insofar as it omits facts included in the other version. But *Doyle*

does not require any such formalistic understanding of 'silence'.

Applying that statement to the present case, we find no error occurred.

*Id.* at 1387.

■ In the case at bar, we hold that the comments, being no more than fair comment upon evidence in the record, were not improper. Appellant waived his right to remain silent. The comments complained of were not inferences drawn from appellant's silence but rather comments on what appellant actually said. Therefore, this proposition of error is meritless. *See also Black v. State,* 663 P.2d 22 (Okl.Cr.1983).

## VI.

Appellant claims in his sixth assignment of error that his motion for a mistrial was erroneously overruled by the trial court when the State introduced into evidence an oral statement that had not been previously presented to him pursuant to pre-trial discovery orders of the court. The circumstances giving rise to this alleged error occurred at trial when appellant was being cross-examined by the prosecutor and was asked whether he had made the statement, "They shouldn't have nagged me about my drinking," to O.S.B.I. Agents Langley and Leathers during questioning following his arrest. Before an answer could be given, defense counsel's objection was sustained.

■ The statement was apparently made to the agents and recorded in their field notes but not transcribed into the interview. Nevertheless the agents thought it significant enough to the case against appellant to inform the prosecutor that he had made it, and the prosecutor then inquired of appellant about the statement at trial. Appellant had filed a pre-trial discovery motion, which was sustained by the district judge, asking for confessions and statements made by him. The district judge sustained the motion by compliance upon being informed by the prosecutor that to his knowledge he had already complied with the discovery motion. The prosecutor, however, failed to comply with

the discovery order, conduct of which this Court strongly disapproves.

■ The State has cited several opinions from this Court in support of its contention that appellant was not entitled to be supplied with the statement given by him because it was unsworn and contained only in the field notes. The precise issue encountered by this Court today, however, is not whether the district judge's ruling was correct, but whether prejudice resulted when appellant was not supplied with the statement. The trial court is cloaked with broad judicial discretion to grant or refuse pre-trial discovery. Granting discovery in this instance was in conformance with our reasoning in *Watts v. State*, 487 P.2d 981 (Okl.Cr.1971), that upon proper application the State should be required to reveal the contents of oral statements.

After the question was asked and defense counsel objected, the trial judge held a conference with the attorneys at the bench, out of the hearing of the jury. The transcript reflects that the trial judge thought that the question asked supplied a motive for appellant to have killed the victims, which had not previously been established for the jury. He was intensely irritated by the prosecutor's not having furnished the appellant with the statement pursuant to the discovery order and admonished the prosecutor to ask no further questions in that regard.

■ We have thoroughly examined the transcript as a whole to determine whether appellant's right to a fair trial was jeopardized when the prosecutor asked appellant about making the statement. Although perilously close to affecting appellant's right to a fair trial, we cannot conclude that the error that occurred when the prosecutor asked the question caused prejudice to appellant which would necessitate reversal of his conviction. When we examined the case as a whole minus the improper question, we still found that the evidence supported a conviction. Perhaps had the prosecutor been permitted to pursue his line of questioning a different result would have been in order.

## VII.

■ In his seventh argument, appellant requests this Court to grant a new trial because of gruesome photographs introduced at trial. The test for admissibility of an allegedly gruesome photograph is whether its probative value outweighs the prejudice accompanying its admission. *King v. State*, 667 P.2d 474 (Okl.Cr.1983); *Oxendine v. State*, 335 P.2d 940 (Okl.Cr. 1958). This Court will not interfere with the trial court's determination on this issue unless an abuse of discretion is shown. *Cooper v. State*, 661 P.2d 905 (Okl.Cr. 1983).

■ During pre-trial, the judge reviewed numerous photographs offered by the State and deleted those that were more gruesome or merely cumulative. The photographs admitted were, in the trial court's opinion, the bare minimum to show the crime scene as it was. Contrary to appellant's brief, the somewhat gruesome pictures admitted were in black and white. The color photographs admitted were not, in our opinion, gruesome. We have examined the six photographs in question in conjunction with the record and find that the trial court did not abuse its discretion in admitting them.

## VIII.

Appellant next urges reversal because the prosecution failed to follow the procedures proscribed by this Court in *Burks v. State*, 594 P.2d 771 (Okl.Cr.1979), regarding the introduction of evidence of other crimes. The evidence complained of comprises the testimony of two witnesses, one to whom appellant stated that he would have killed Elmo Gandy if he had not left Anadarko, and the other to whom appellant said that he had once hit Elmo Gandy for holding up certain hospital records that appellant needed and that if he ever caught his brother-in-law with another woman "he [Elmo Gandy] would never do it again."

■ These statements are not the type of evidence which the general rule against

introduction of evidence of other crimes is intended to exclude. *See, e.g., Stanfield v. State*, 657 P.2d 1200 (Okl.Cr.1983); *Agee v. State*, 562 P.2d 913 (Okl.Cr.1977). Any implication that another crime was committed was obvious only to defense counsel. "To extend the protection of this rule to every possible implication which might be conceived by defense counsel would be a severe stretching of the rule. This Court is not willing to extend the rule this far." *Agee*, 562 P.2d at 916.

Furthermore, appellant cannot complain that he was not on notice that the State intended to elicit testimony concerning the statements appellant had made as he filed and argued a motion in limine trying to suppress the statements. The testimony that appellant once hit Elmo Gandy was introduced without objection and was not alleged as error in the motion for new trial. We find no merit to this assignment of error.

### IX.

Alleged in the ninth assignment of error is that the admission at trial of certain physical evidence was improper as the items were irrelevant, incompetent and immaterial. The pieces of evidence at issue are two pairs of cowboy boots, a plaster cast of a boot print, an ink pen, and $433 in cash.

Appellant was carrying the $433 in cash when he was arrested. Although defense counsel sought by way of a motion in limine to keep this fact from being presented to the jury, no objection was made when Sheriff Brown testified about the money appellant had with him at the time of arrest. Thus error, if any, was waived. *See Teegarden v. State*, 563 P.2d 660 (Okl.Cr. 1977).

The ink pen was properly admitted at trial. It was on appellant's person when he was arrested and was probative as a small amount of blood found beneath the clip was determined to be human. Appellant contends that the pen should not have been admitted because there was no proof that he had the pen with him at the time he

allegedly committed the murders and because there was not enough blood to determine the blood type. Appellant cites no authority for this claim and we will not search the books for authority for him. *See Tabor v. State*, 582 P.2d 1323 (Okl.Cr. 1978).

Plaster casts made of two bootprints found near the Gandy residence were introduced into evidence along with two pairs of Elmo Gandy's boots found inside the house. One of the plaster casts was consistent with one of Gandy's left boots. The other print could not be matched to either pair. Evidence showed that appellant was wearing boots the night that the Gandys were murdered. We believe that the unmatched bootprint was therefore probative, as were the matched print and boots since they showed that the unmatched print was compared to but not made by the victim's boots. We find no error.

### X.

In his tenth assignment of error, appellant cites numerous incidents of alleged prosecutorial misconduct and contends that the trial court erred in not declaring a mistrial in light of such misconduct. The appellee's primary response to this allegation is that any error was "waived by the multitude and magnitude of the defense counsel's misconduct." The attorney general's brief lists forty-two instances of alleged misconduct on the part of defense counsel but cites no legal authority for this argument, and we are unaware of any.

We have examined each of appellant's allegations of error and find none that require reversal or modification. Some of the statements were within the wide latitude provided counsel in making closing argument. *Wacoche v. State*, 644 P.2d 568 (Okl.Cr.1982). Others were cured when the trial judge admonished the jury to disregard the prosecutor's statements. *Coats v. State*, 589 P.2d 689 (Okl.Cr.1978). Only two of the allegations warrant discussion.

This Court has stated many times that "reasonable doubt" is self-explanatory

and that definitions tend to confuse rather than clarify the meaning. We disapprove of the prosecutor's attempt, in the case at bar, to define reasonable doubt in his voir dire of the jury. As his definition was not grossly incorrect, however, the appellant was not prejudiced and reversal is not required. *See Williams v. State,* 572 P.2d 257 (Okl.Cr.1977).

■ The prosecutor also attacked the credibility of defense counsel, a practice of which this Court does not approve. *See Mayberry v. State,* 603 P.2d 1150 (Okl.Cr. 1979). The remarks were made in response to defense counsel's opening statement in which he told the jury he would prove that three people killed the Gandys and that Billy Stout was not one of them, that Billy was physically unable to commit the crime or to drive the car to Chickasha. Although the prosecutor could have—and should have—pointed out defense counsel's failure to offer such proof without directly attacking defense counsel's credibility, we do not find that the remarks prejudiced the defendant. *Cf. Collins v. State,* 561 P.2d 1373 (Okl.Cr.1977), *cert. denied* 434 U.S. 906, 98 S.Ct. 306, 54 L.Ed.2d 193 (wherein the Court held that allowing the prosecutor to demonstrate in closing argument the fallacy of defense counsel's opening statement was not going outside the record and was not error.)

■ Furthermore, the trial court admonished the jury that these totally improper remarks were not evidence and should not be considered. Admonishing the jury usually cures error, if any, unless the error appears to have determined the verdict. *Mahorney v. State,* 664 P.2d 1042 (Okl.Cr.1983). The evidence against appellant was conclusive albeit circumstantial. Any error was cured by the admonition.

## XI.

■ The jury found that two aggravating circumstances were present and con-

demned appellant to death. Appellant now challenges the constitutionality of the statutes which allow imposition of the death penalty. Two decisions holding our statutory scheme to be constitutional have been handed down by this Court since appellant's brief was filed. *Jones v. State,* 660 P.2d 634 (Okl.Cr.1983) and *Boutwell v. State,* 659 P.2d 322 (Okl.Cr.1983) dispose of appellant's contentions in this regard.

At the second stage of the trial the prosecutor stated that the State would rely upon the evidence submitted in the case in chief, then formally introduced the State's Exhibits that were admitted in the first stage. Defense counsel demurred to the evidence and moved for a directed verdict. As a subproposition under his eleventh assignment of error, appellant, relying on *Chaney v. State,* 612 P.2d 269 (Okl.Cr. 1980), argues that inasmuch as the prosecutor failed to formally introduce into the second stage all the testimony and evidence that had been introduced at the first stage, the evidence was insufficient to prove the aggravating circumstances alleged and the trial court erred in overruling his motion for a directed verdict. The appellant's reliance on *Chaney* is misplaced as this precise issue was not before the Court in that case. In fact, this issue appears to be one of first impression in this jurisdiction.

■ Although "[t]he second stage of a murder trial is like the first stage in being a fact-finding hearing, and the rules of evidence must be followed," *Chaney,* 612 P.2d at 279, it is a continuation of the same trial. Accordingly, we find no reason for requiring a resubmission of the first stage evidence into the sentencing phase of the trial.

The Georgia Supreme Court reached the same conclusion in *Eberheart v. State,* 232 Ga. 247, 206 S.E.2d 12 (1974),[2] wherein that court stated the following:

> death for the crime of rape of an adult woman is a grossly disproportionate and excessive punishment forbidden by the Eighth Amendment as cruel and unusual punishment. The proposition for which the case is cited is still valid

**2.** The sentence of death in *Eberheart* was subsequently vacated by the United States Supreme Court in *Eberheart v. Georgia,* 433 U.S. 917, 97 S.Ct. 2994, 53 L.Ed.2d 1104 (1977) upon a different ground, that is, because the sentence of

The bifurcated trial was created to withhold matters inadmissible on the issue of guilt or innocence from the jury until that issue had been determined. The statute is clear that the pre-sentence hearing is for additional evidence and in no way excludes from consideration on sentence the matters heard on the issue of guilt or innocence.

*Id.* 232 Ga. at 253–54, 206 S.E.2d at 17.

Although the Georgia Statute concerning sentencing stage procedure [3] is not identical to our corresponding statute,[4] we are of the opinion that the Oklahoma Legislature intended for the prosecutor to be able to present *additional* evidence at the sentencing phase.[5]

■ After reviewing all the evidence submitted during the appellant's trial, we conclude that the evidence was sufficient to show that the appellant knowingly created a great risk of death to more than one person as appellant killed two people. *See Stafford v. State,* 669 P.2d 285 (Okl.Cr. 1983); *Chaney v. State,* 612 P.2d 269 (Okl. Cr.1980). The evidence also fully supports the finding that the murders in this case were indeed heinous, atrocious, or cruel. The murderer of the Gandys literally beat their brains out. The evidence did not show, as appellant suggests, that the individuals were killed instantly and simultaneously while lying asleep in bed on their backs. Neighbors heard Mrs. Gandy screaming. Mr. Gandy's body was on the floor with his head against the bed.

## XII.

Finally appellant alleges that the accumulation of errors discussed above denied him a fair trial. From an examination of the record we conclude that the defendant's trial, although imperfect, was fair and impartial and that no substantial right was prejudiced.

## XIII.

Having found no error warranting reversal or modification, we now must consider the sentences assessed in light of Title 21 O.S.1981, § 701.13(C). We have already found that the evidence supports the jury's finding of two statutory aggravating circumstances.

We further find that the sentences of death were not imposed under the influence of passion, prejudice, or any other arbitrary factor. The record reflects no bias or prejudice, and the evidence was conclusive.

We have compared this case with prior decisions made under our present death penalty statute [6] and, considering the crime and the defendant, conclude that the sentences of death are neither excessive nor disproportionate. None of the circumstances requiring reversal [7] or modification [8] in

under Georgia law. *See Blankenship v. State,* 251 Ga. 621, 308 S.E.2d 369 (1983).

**3.** Ga. Code Ann., § 17–10–2 (1981).

**4.** 21 O.S.1981, § 701.10.

**5.** 21 O.S.1981, § 701.10 states in pertinent part that "[i]n the sentencing proceeding, evidence *may* be presented ... as to any of the aggravating circumstances enumerated in this act." (Emphasis added).

**6.** We compared the present case to the following cases which were affirmed on appeal:

*Robison v. State,* 677 P.2d 1080 (Okl.Cr.1984); *Dutton v. State,* 674 P.2d 1134 (Okl.Cr.1984); *Stafford v. State,* 669 P.2d 285 (Okl.Cr.1983); *Coleman v. State,* 668 P.2d 1126 (Okl.Cr.1983); *Stafford v. State,* 665 P.2d 1205 (Okl.Cr.1983); *Davis v. State,* 665 P.2d 1186 (Okl.Cr.1983); *Ake*

*v. State,* 663 P.2d 1 (Okl.Cr.1983); *Parks v. State,* 651 P.2d 686 (Okl.Cr.1982; *Jones v. State,* 648 P.2d 1251 (Okl.Cr.1983); *Hays v. State,* 617 P.2d 223 (Okl.Cr.1980); and, *Chaney v. State,* 612 P.2d 269 (Okl.Cr.1980).

**7.** *See White v. State,* 674 P.2d 31 (Okl.Cr.1983); *Coleman v. State,* 670 P.2d 596 (Okl.Cr.1983); *Hatch v. State,* 662 P.2d 1377 (Okl.Cr.1983); *Smith v. State,* 659 P.2d 330 (Okl.Cr.1983), *rev'd,* — U.S. —, 104 S.Ct. 324, 78 L.Ed.2d 297 (1983), *on remand,* 55 O.B.A.J. 371 (Okl.Cr.1984) (Unpublished); *Hall v. State,* 650 P.2d 893 (Okl. Cr.1982); *Brewer v. State,* 650 P.2d 54 (Okl.Cr. 1982); *Giddens v. State,* No. F–89–164 (Okl.Cr. Nov. 17, 1981); *Hager v. State,* 1369 (Okl.Cr. 1980).

**8.** *See Eddings v. State,* 688 P.2d 342, 55 O.B.J. 1653 (Okl.Cr.1984); *Morgan v. State,* No. F–79–487 (Okl.Cr. Nov. 14, 1983) (Unpublished);

previous cases are present in the case at hand. Accordingly the judgments and sentences are hereby AFFIRMED.

PARKS, Judge, special concurrence:

While I concur in the well reasoned opinion by Judge Brett, I feel it the better practice to formally introduce evidence from the guilt stage into the second stage of death penalty cases. It would be of great benefit to the trial court, the jury and this Court to be directed to the specific evidence of aggravation upon which the State relies in seeking the death penalty.

*Johnson v. State,* 665 P.2d 815 (Okl.Cr.1982); *Glidewell v. State,* 663 P.2d 738 (Okl.Cr.1983); *Jones v. State,* 660 P.2d 634 (Okl.Cr.1983); *Driskell v. State,* 659 P.2d 343 (Okl.Cr.1983); *Boutwell v. State,* 659 P.2d 322 (Okl.Cr.1983); *Munn v. State,* 658 P.2d 482 (Okl.Cr.1983); *Odum v. State,* 651 P.2d 703 (Okl.Cr.1982); *Burrows v. State,* 640 P.2d 533 (Okl.Cr.1982); *Franks v. State,* 636 P.2d 361 (Okl.Cr.1981); *Irvin v. State,* 617 P.2d 588 (Okl.Cr.1980).