Anthony Rozelle BANKS, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–81–179.

Court of Criminal Appeals of Oklahoma.

May 30, 1985.

Robert S. Lowery, Tulsa, for appellant.

Michael C. Turpen, Atty. Gen. of Oklahoma, William H. Luker, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BRETT, Judge:

In the early morning hours of April 11, 1978, Anthony Rozelle Banks and his brother, Walter Thomas Banks, robbed a convenience store at the corner of 36th and Sheridan streets in Tulsa. During that robbery Anthony shot and killed the clerk on duty, David Paul Fremin. The two brothers were jointly charged with and tried in the Tulsa County District Court, Case No. CRF–79–3393, for First Degree Murder, the Honorable Joe Jennings, presiding. The jury found both guilty as charged and sentenced Walter to life imprisonment. The sentence for Anthony was death. It is from this judgment and sentence that Anthony Banks has perfected this appeal. We affirm.

The case went unresolved for fifteen months when the appellant, having been arrested for an unrelated armed robbery, offered to give the police some information about Fremin's murder in hopes of getting more lenient treatment for the robbery. In the subsequent investigation, police were able to identify a fingerprint lifted from the crime scene as that of Anthony Banks. They also located Traci Banks, who had been Anthony's girlfriend at the time of the murder and who had been living with Anthony and Walter in their Tulsa apartment.

Traci testified at trial that about three o'clock in the morning of April 11, 1978, Walter and Anthony left the apartment to "go do something." Anthony returned about 5:00 a.m. with a small brown box containing money, food stamps, and blank money orders. He also carried a man's wallet containing the driver's license of David Paul Fremin. Traci recognized that name the next day when she read newspaper accounts of the murder.

As she helped Anthony count the contents of the box, he told her that he and Walter had robbed the Git-N-Go Store at 36th and Sheridan, Walter keeping watch outside while Anthony killed the clerk in

order to avoid being identified. Walter's testimony was substantially the same.

Medical testimony established that one of the victim's two head wounds was superficial while the other was certainly fatal. Both were inflicted from very close range almost directly above the victim's head. The locations and directions of the wounds were consistent with the notion that Fremin had been sitting or kneeling when shot.

### I.

■ The appellant first challenges the constitutionality of Oklahoma's death penalty statute. 21 O.S.1981, § 701.7. He contends the statute must be invalidated because it does not further a compelling state interest that cannot be fulfilled by less drastic means. The United States Supreme Court in *Gregg v. Georgia*, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976), and this Court in *Burrows v. State*, 640 P.2d 533 (Okl.Cr.1982), *Glidewell v. State*, 663 P.2d 738 (Okl.Cr.1983), and *Davis v. State*, 665 P.2d 1186 (Okl.Cr.1983) rejected this argument. We do not adopt it now.

### II.

*Burrows* also disposes of appellant's second assignment of error, that is, that the death penalty is unconstitutionally arbitrary because of the discretion that prosecutors retain with regard to seeking the death penalty. This assignment of error is without merit.

### III.

The appellant next alleges that six prospective jurors were improperly dismissed for cause in violation of the rule set forth in *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). Therein the United States Supreme Court determined that the death penalty could not be carried out if the jury that imposed it had been selected by excluding for cause venirepersons who expressed general objections to the death penalty or conscientious or religious scruples against its infliction. *Id.* at 521, 88 S.Ct. at 1776, 20 L.Ed.2d at 784. The most that can be required of a

venireperson is that he be willing to consider all the penalties provided by law and that he not be irrevocably committed before the trial has begun.

In the trial below, the judge systematically asked each juror the following question: "In a case where the law and the evidence warrant, in a proper case, could you, without doing violence to your conscience, agree to a verdict imposing the Death Penalty?" Although this Court has implicitly approved of this question by affirming cases in which it was used and in which it otherwise appeared that the dismissed venirepersons were firm in their resolve not to consider the death penalty, see, e.g., Parks v. State, 651 P.2d 686 (Okl. Cr.1982), the question is confusing.

Violence done to one's conscience is not the point of the Witherspoon voir dire examination. As this writer has said in dissent, the only legitimate concern is whether each jury member will consider the imposition of the death sentence, as one of the alternatives provided by state law, should the case be appropriate for that punishment. Davis v. State, 665 P.2d 1186, 1204 (Okl.Cr.1983) (Brett, J., dissenting).[1]

■ In the present case, however, a second question was also asked of each juror:

If you found beyond a reasonable doubt that the Defendant was guilty of Murder in the First Degree, and if under the evidence and the facts and the circumstances of the case the law would permit you to consider a sentence of Death, are your reservations about the Death Penalty such that regardless of the law, the facts and the circumstances of the case, you would not inflict the Death Penalty?

Three of the jurors challenged herein for cause, veniremen Moats, Lair, and Parker,

responded clearly and unambiguously that under no circumstances would they vote to inflict the death penalty. They were clearly committed to vote against the death penalty regardless of the facts of the case; therefore, it was permissible to dismiss them for cause. See Coleman v. State, 668 P.2d 1126 (Okl.Cr.1983); Chaney v. State, 612 P.2d 269 (Okl.Cr.1980), modified on other grounds, sub. nom., Chaney v. Brown, 730 F.2d 1334 (10th Cir.1984).

■ Prospective juror Leek answered the former question, "I don't think I could sir," and the latter question, "I don't believe I would, sir." We affirmed the dismissal for cause of a potential juror who answered similarly in Dutton v. State, 674 P.2d 1134 (Okl.Cr.1984). Thus it was not error to dismiss venireman Leek for cause under Witherspoon.

■ Juror Boyd was also dismissed for cause during voir dire. The examination was conducted, in pertinent part, as follows:

THE COURT: If it becomes necessary to consider punishment in this case, in a case where the law and the evidence warrant, in a proper case, could you without doing violence to your conscience agree to a verdict imposing the death penalty?

MR. BOYD: That I'd have to give thought.

THE COURT: I will ask you to give it thought right now.

MR. BOYD: Well, I don't think I could.

THE COURT: You tell me if you were selected as a juror in this or any other case in which a defendant was charged with First Degree Murder and you and your fellow jurors found beyond a reasonable doubt that the defendant was

---

**1.** Ambiguous questions are difficult to answer clearly, and clarity is extremely important in Witherspoon examination. Therefore we suggest that compound questions, such as the one regarding violence to one's conscience, be avoided. For example, the following approach, to this writer, seems preferable to that mentioned heretofore:

The laws of Oklahoma permit only two possible punishments for persons found guilty of

first degree murder: either imprisonment for life or death. Do you have feelings about capital punishment that would prevent or substantially impair you from considering either of these punishments if the defendant were found guilty of first degree murder?

Such a question may help the trial judge to discover substantial juror bias either for or against capital punishment.

guilty of Murder in the First Degree, under the evidence, facts and circumstances of the case, the law were to permit you to consider a sentence of death, your reservations about the death penalty are such that regardless of the facts or regardless of the circumstances of the case you would not inflict the death penalty?

MR. BOYD: Well, that would be taking a life; I don't feel like I should do that. It would be like I was taking a life too.

THE COURT: Your answer would be you would not inflict the death penalty?

MR. BOYD: I guess I wouldn't.

It appears to this Court that juror Boyd was committed to vote against the death penalty regardless of the law and that it was therefore proper to permit him to be dismissed for cause.

Our determination of this issue is further supported by the recent United States Supreme Court decision in *Wainwright v. Witt*, — U.S. ——, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985). Therein the Court held that the proper standard for determining when a prospective juror may be excluded for cause because of his or her views on capital punishment is that the juror's views would " 'prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.' " *Id.* at 852. The Court further stated that a juror's bias need not be proved with "unmistakable clarity;" neither must the juror express an intention to vote against the death penalty "automatically." *Id.*

This Court has previously noted that trial judges, having heard the juror's voice inflection and viewed his demeanor, may be fairly convinced of a juror's bias when such bias appears in a written record to be less than "unmistakably clear." *See Davis v. State*, 665 P.2d 1186 (Okl.Cr.1983). The majority in *Witt* also observed that determinations of juror bias simply cannot be reduced to "question and answer sessions which obtain results in the manner of a catechism." *Witt*, 105 S.Ct. at 852. In the

present case, therefore, we find that the trial judge did not abuse his discretion in dismissing these jurors for cause because their answers established the fact that their views about capital punishment would have prevented or substantially impaired the performance of their duties as jurors in accordance with the instructions and the oath.

■ Nor was it error in this case to refuse the appellant an opportunity to rehabilitate the excused veniremen. The manner and extent of voir dire examination rests largely in the sound discretion of the trial judge. *McFatridge v. State*, 632 P.2d 1226 (Okl.Cr.1981). This Court held in *Vardeman v. State*, 54 Okl.Cr. 329, 20 P.2d 194 (1933):

> After the court has asked jurors as to their legal qualifications, it is hardly necessary for the state or defendant's counsel to ask them the same questions, although sometimes this is done. When any part of the questioning is denied or excluded, in order to preserve the question the proper procedure for defendant's counsel is to dictate into the record the questions he desires to ask the jurors, and obtain a ruling of the court thereon, thereby enabling this Court to determine if the trial court abused its discretion in refusing to permit counsel to ask the questions.

*Id.* at 330, 20 P.2d at 195. *See also* 632 P.2d at 1229.

■ In the present case the defendant failed to make a record of the questions he intended to ask the excused veniremen, therefore we do not have a proper record from which to review the trial court's decision to disallow further questioning. Reviewing the record before us in this regard we do not find any abuse of judicial discretion. Further questioning in this difficult area may only have served to confuse the prospective jurors when the pertinent questions had been asked and clearly answered. *Cf. Chaney v. State*, 612 P.2d 269 (Okl.Cr. 1980) ("[o]ne of the tendencies of voir dire in a challenge situation is that the longer it lasts the less objective it becomes...."),

*modified* on other grounds, *sub nom. Chaney v. Brown,* 730 F.2d 1334 (10th Cir. 1984).

■ The appellant also challenges the dismissal for cause of a sixth juror, Ms. Bellamy, as a violation of *Witherspoon.* She was not dismissed because of her inability to consider imposing the death penalty, however, so such a challenge is not to the point. Ms. Bellamy was dismissed because the trial judge believed that she might be unable to devote her full attention to the proceedings. She stated that she had two small children for whose care she had made arrangements during the scheduled week of jury duty. She also stated that if the trial ran on into a second week it would cause her some problems. She said she could make further arrangements but that such necessity might cause her difficulty and that she preferred to be excused from sitting on the case. To force her to sit even for the first week of trial might well have caused in her some ill will resulting in prejudice toward the defendant. It was not an abuse of the trial judge's discretion to dismiss her for cause. *See Washington v. State,* 568 P.2d 301 (Okl.Cr.1977).

## IV.

■ In his fourth assignment of error the appellant charges that reversible error occurred during the voir dire examination of the jury due to improper comments made by the prosecutor. Mr. Jerry Truster, an assistant district attorney, asked a prospective juror, within the hearing of the whole panel, if she believed that victims of crimes have rights. After objections and requests for admonition were denied the prosecutor continued the line of questioning about victims having rights like those of the defendant. He asked the questions yet another time before the panel was finally selected. These comments and questions are improper and were asked with the intention of inflaming the prejudices of the jury panel. This Court does not approve of argument or comment so intended. *Tobler v. State,* 688 P.2d 350 (Okl.Cr.1984); *Ward v. State,* 633 P.2d 757 (Okl.Cr.1981). De-

fense objections should have been sustained and the jury admonished to disregard such comments. Still we are unable to say that these comments alone require modification or reversal. The evidence in the case is overwhelming. The error was not manifestly prejudicial. *See Hunter v. State,* 637 P.2d 871 (Okl.Cr.1981).

## V.

■ The appellant next alleges reversible error occurred during jury selection because of a reference to the pardon and parole system. One of the veniremen was asked if she knew or was related to a certain criminal defendant with the same surname as hers. She replied that she did not know that person but that she had read in the newspaper that he was eligible for parole. There was no other reference to the possibility of pardon or parole through the end of the trial. While there was no admonition given the jury on this point we do not find this single brief, unsolicited mention of the parole system during voir dire to be prejudicial.

The appellant further contends that the prosecutor drew attention to the parole possibility when questioning another prospective juror during voir dire. We disagree. The challenged question can only be understood as a reference to the bifurcated nature of the trial itself. These contentions are thus without merit.

## VI.

■ In his sixth assignment of error the appellant alleges that photographs of the crime scene and the murder victim were erroneously admitted at trial because they were irrelevant and unduly gruesome. The admissibility of demonstrative evidence is a question of legal relevance that is within the discretion of the trial court, whose decisions will not be disturbed on appeal absent an abuse of that discretion. *Assadollah v. State,* 632 P.2d 1215 (Okl.Cr. 1981). The photographs in question accurately depicted the scene of the crime, the position of the victim's body, and the location of the wounds upon the victim's head.

They tended to support testimony that the murder was committed during a robbery and that the victim was shot from directly overhead. We cannot say that these black and white photographs were more prejudicial than probative; therefore this assignment of error is without merit. *Glidewell v. State*, 626 P.2d 1351 (Okl.Cr.1981); *Deason v. State*, 576 P.2d 778 (Okl.Cr.1978).

### VII.

The appellant next asserts that it was reversible error to refuse to grant his motion for a severance due to the admission at trial of extrajudicial statements of his co-defendant. He contends that statements made by his brother Walter on the witness stand prejudiced the jury against him in violation of *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). In that case the Supreme Court held that it was reversible error in a joint trial to admit into evidence a co-defendant's extrajudicial confession when that statement implicates the defendant. In such a case a severance should be granted.

■■■■ The present case does not fall within the purview of *Bruton*, however, because the objected to statements were not confessions. Walter's first statement to the police corroborated Anthony's alibi without inculpating himself. The second, which was not recorded but was put into evidence at trial through Walter's testimony, consisted entirely of Walter's admission to police that his prior statement was a lie. Neither statement tended to inculpate Anthony. When a co-defendant's extrajudicial statements do not implicate the defendant, the trial court does not abuse its discretion by denying a severance. *See Riggle v. State*, 585 P.2d 1382 (Okl.Cr.1978). In addition, where, as here, confessions are not involved, the mere fact that a co-defendant attempts to escape punishment by inculpating the defendant is not sufficient ground for requiring a severance. *Hinds v. State*, 514 P.2d 947 (Okl.Cr.1973). We leave the decision to grant or deny a severance to the discretion of the trial court, and absent an abuse thereof resulting in prejudice to the defendant we will not disturb that decision on appeal. *Menefee v. State*, 640 P.2d 1381 (Okl.Cr.1982). The appellant has failed to show any prejudice resulting from the joint trial; therefore this assignment is without merit.

### VIII.

■■■■ The appellant next alleges that he was denied a fair trial due to improper comments made by the prosecutor throughout the trial. The prosecutor more than once referred to the appellant as a "snitch", commented upon the appellant's truthfulness during cross-examination, and insinuated that the appellant was having an extramarital affair. Such comments violate three of the criteria of the American Bar Association Standards of Criminal Justice "The Prosecution Function" Section 5.8 which was adopted by this Court in *Dupree v. State*, 514 P.2d 425 (Okl.Cr.1973). But though these and other comments were improper, most of them either were not preserved for appeal because of failure to object or to request admonition of the jury, *Tahdooahnippah v. State*, 610 P.2d 808 (Okl.Cr.1980); *Burrows v. State*, 640 P.2d 533 (Okl.Cr.1982), or were cured by the trial judge's admonitions as to those comments. *Holdge v. State*, 586 P.2d 744 (Okl. Cr.1978). We have therefore reviewed the record for fundamental error only. *Coleman v. State*, 668 P.2d 1126 (Okl.Cr.1983). In light of the overwhelming evidence in this case we are unable to conclude that the improper comments prejudiced the jury. Nor is their cumulative effect such as would warrant reversal or modification. *Robison v. State*, 677 P.2d 1080 (Okl.Cr. 1984); *Sizemore v. State*, 499 P.2d 486 (Okl.Cr.1972).

### IX.

■■■■ In his ninth assignment of error the appellant alleges that a judgment and sentence on a 1980 Armed Robbery conviction was erroneously admitted into evidence during the second stage of the trial. We need not address this issue, however, because two other previous convictions for

armed robbery were introduced into evidence. Even if it was error to admit into evidence the 1980 conviction, there is no reasonable probability that this evidence contributed to the jury's sentence. The error, if any, was therefore harmless. *See Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *Fahy v. Connecticut,* 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963).

### X.

In his tenth assignment of error the appellant alleges that the trial court should have stricken allegation number two from the Bill of Particulars because of insufficient proof that Banks killed David Fremin in order to avoid arrest or prosecution. 21 O.S.1981, § 701.12(5). The focus of this aggravating circumstance is the state of mind of the murderer; it is he who must have the purpose of avoiding or preventing lawful arrest or prosecution. *Parks v. State,* 651 P.2d 686 (Okl.Cr.1982). Traci Banks testified that Anthony told her he killed Fremin in order to avoid being identified. Her testimony clearly addressed the issue of Anthony's state of mind at the time of the murder and provided sufficient basis for the jury to find that this aggravating circumstance existed beyond a reasonable doubt. The tenth assignment of error is without merit.

### XI.

In his eleventh assignment of error the appellant claims that the trial court should have granted his demurrer to the evidence showing that he would be a continuing threat to society. We disagree. In the second stage of the trial, the State presented evidence that Anthony Banks had been previously convicted of three felonies, each involving the use of firearms and threats of violence to others. This evidence is sufficient to show the aggravating circumstance charged. *Eddings v. State,* 616 P.2d 1159 (Okl.Cr.1980), *reversed* on other grounds, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982), *modified,* 688 P.2d 342 (Okl.Cr.1984). The manner in which the murder was committed also supports a finding of this aggravating circumstance. *Robison v. State,* 677 P.2d 1080 (Okl.Cr. 1984).

To support his allegation of error the appellant cites only *Boutwell v. State,* 659 P.2d 322 (Okl.Cr.1983). We modified the death sentence to life imprisonment in that case because of improper instruction on one of the aggravating circumstances. That ruling does not help the appellant's contention herein because there was no error in the given instructions. The eleventh assignment of error is therefore without merit.

### XII.

The appellant next asserts that his motion to strike allegation number three from the Bill of Particulars should have been granted. He contends that the Bill of Particulars must include statements of the evidence that the State intends to introduce to show aggravation. He relies on the language of 21 O.S.1981, § 701.10 which reads in pertinent part:

[O]nly such evidence in aggravation as the State has made known to the defendant prior to his trial shall be admissible.

The purpose of the Bill of Particulars is to allow the accused to prepare a defense. The defendant herein was notified on January 26, 1981, that the State would seek the death penalty against him and which aggravating circumstances it would seek to prove, the Bill of Particulars having been filed previously. On February 2, two weeks before the trial commenced, the State made known during a hearing on motions that it intended to introduce Judgments and Sentences from three prior convictions for Robbery with Firearms in order to show that Banks would be a continuing threat to society. The prosecutors also stated that they would rely on the evidence from their case in chief in order to prove the other aggravating circumstances. At the February 17th trial, the State did in fact introduce the evidence it had specified and in the manner promised. The notice given in this case was sufficient to permit

Banks to prepare his defense; therefore this assignment is without merit.

▮▮▮ The appellant also challenges the constitutionality of the aggravating circumstance that he would probably be a continuing threat to society. He asserts that it is vague and overbroad. We do not agree. *See Johnson v. State,* 665 P.2d 815 (Okl.Cr. 1982).

### XIII.

▮▮▮ In addition to the arguments raised by the appellant we must make three determinations in review of the death sentence imposed in this case: whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor; whether the evidence supports the jury's or judge's finding of a statutory aggravating circumstance; and whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant. 21 O.S.1981, § 701.-13(C).

We have fully reviewed the transcript and find it devoid of prejudice or bias. While there were some improper comments we are confident that they did not influence the passions of the jury or otherwise prejudice the jury against the appellant.

Our second determination regards the sufficiency of the evidence showing aggravating circumstances. The jury was instructed on three aggravating circumstances: (1) the defendant was convicted of prior felonies involving the use or threat of violence to the person; (2) the murder was committed for the purpose of avoiding or preventing a lawful arrest or prosecution; and, (3) the existence of a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society.

Traci Bank's testimony that Anthony killed David Fremin to avoid being identified is sufficient to support a finding that the murder was committed to avoid arrest or prosecution. The State introduced three certified Judgments and Sentences for Armed Robbery that were final at the time of trial below. Any one of these would be sufficient to support the jury's finding that he had been convicted of prior felonies involving the use or threat of violence to the person. Both the manner in which the murder was committed and the prior armed robbery convictions support a finding that Banks would probably commit future acts of violence constituting a continuing threat to society.

Finally, our third determination concerns the proportionality of the sentence in this case as compared to those in similar cases. In *Hays v. State,* 617 P.2d 223 (Okl.Cr. 1980), the defendant shot the attendant of a shoe store twice in the head at close range during a robbery. The entry wounds were below the left and right ears. The defendant had been convicted of several previous felonies and he offered no evidence or testimony at trial despite the fact that he took the witness stand in his own defense. His death sentence was affirmed.

The present case is similar to *Hays* in that the defendant shot the victim twice in the head at close range during a robbery. While Anthony Banks was, unlike Hays, not intoxicated when he killed Fremin, the difference does not significantly affect the proportionality between the two.

In *Parks v. State,* 651 P.2d 686 (Okl.Cr. 1982), the defendant killed a filling station attendant who had written down his license plate number. Parks feared that the attendant would discover that the credit card he was using was not his own. The jury panel therein found only one of the three charged aggravating circumstances: that the murder was committed to avoid prosecution. There were recorded telephonic conversations in which the defendant stated that he killed the attendant for that very purpose. The death sentence was affirmed on appeal.

In the present case Anthony Banks told his girlfriend that he killed the store attendant in order to avoid being identified in the robbery. The jury herein also found that he had committed the murder to avoid prosecution. We therefore find that the

sentence given Anthony Rozelle Banks in this case is proportionate to similar cases in our state. We have also considered other cases in which the death penalty was affirmed for murders during armed robberies. Some of these murders involved multiple victims. *See, e.g., Robison v. State*, 677 P.2d 1080 (Okl.Cr.1984); *Dutton v. State*, 674 P.2d 1134 (Okl.Cr.1984); *Coleman v. State*, 668 P.2d 1126 (Okl.Cr.1983). These cases do not, however, tend to indicate that Bank's sentence is disproportionate.

The sentence of death by lethal drug injection in accordance with 22 O.S.1981, § 1014 is therefore AFFIRMED.

BUSSEY, J., concurs.

PARKS, P.J., concurs in results.