**Robert WILSON, a/k/a Robert Jackson, a/k/a Rick James, a/k/a Robert James, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. 519.**

Court of Criminal Appeals of Oklahoma.

May 27, 1988.

David Autry, Asst. Appellate Public Defender, Norman, for appellant.

Michael C. Turpen, Atty. Gen., M. Caroline Emerson, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BRETT, Presiding Judge:

Appellant, Robert Wilson, a/k/a Robert James Wilson, a/k/a Robert Jackson, a/k/a Rick James, a/k/a Robert James, was convicted of Murder in the First Degree in Comanche County District Court, Case No. CRF–84–128. 21 O.S.1981, § 701.7. The jury found two aggravating circumstances which were: he "knowingly created a great risk of death to more than one person", and the probability that in the future he "would commit criminal acts of violence that would constitute a continuing threat to society." 21 O.S.1981, § 701.12(2), (7). He was sentenced to death, and he appeals.

At 2:30 p.m. on March 13, 1984, appellant and Floyd Harris robbed Brittains Catalog Showroom, which is located in a shopping center in Lawton. Appellant was armed with a semi-automatic .25 caliber pistol and Harris had a knife. Wilson and Harris first came to the store at mid-morning; after an hour of browsing, they left about 11:45 a.m. and went to the home of two women friends, Jeanette Garland and Celeste Boynes where they drank a half-pint of liquor and planned the robbery.

When Wilson and Harris returned to the store, they pretended to be shopping, since there were other customers in the store. Sheila Garrett, a clerk, remembering the men from the morning, called downtown to the area manager, Don Thomas, and asked that help be sent out. She wrote down their car tag number; they were driving a pink Lincoln Continental. After half an hour, only one of the customers and her two year old daughter were left in the store. It was then that Wilson, threatening with the pistol, demanded the keys to the jewelry cases; he was quite visibly agitated and warned against tripping any alarms.

Appellant took Patti Bynum, one of the clerks, to the front of the store to unlock the jewelry cases. It was then that Don Thomas was seen coming across the parking lot to the store. When appellant saw Thomas, he shoved Ms. Bynum towards the storeroom. Shortly after she entered the storeroom, she and the others heard two gun shots. Harris told Ms. Bynum to lie on the floor and he taped her up. Wilson then came back and tried to forcibly pull Ms. Bynum to the front; when she resisted, Ms. Garrett volunteered. Ms. Garrett saw Thomas' inert body lying face up covered with blood near the back of the showroom.

Appellant rifled the womens' purses, after filling a pillowcase with the contents of the jewelry cases. Wilson then instructed the hostages to stay put and not make any noise for five minutes. A short time later, two young women shoppers found Thomas' body and called the police.

Around 4:00 p.m. Wilson and Harris showed up again at Jeanette Garland's; she said they had a pillowcase with something in it; they went straight through the house to the bedroom and closed the door. A short time later, Ms. Garland and Boynes went into the bedroom where they saw a lot of new jewelry with sales tags still attached spread out on the bed. Wilson and Harris gave the women some of the jewelry and Wilson told Ms. Boynes he had shot a man once in the stomach and once in the head. Harris confirmed it; and it was then that Harris left in his car.

Wilson put some of his personal belongings and the gun in the trunk of Boynes' car and asked her to drive him to some places in town. One of the stops was at a friend's house by the name of Phyllis Conerly where Wilson showed her some of the jewelry taken in the robbery. Ms. Conerly asked Wilson where he got it and he told her he had been in on a robbery at Brittain's. He gave her some of the jewelry with the tags still attached. Later, in a story he related to Ms. Conerly's husband, he described his part in the robbery and shooting as the part Harris had actually played. After picking Wilson up at the Conerly's, Ms. Garland, her young daughter, and Ms. Boynes drove Wilson to Okla-

homa City to evade the Lawton Police. In Oklahoma City, Wilson stopped at a T.G. & Y. store and with Ms. Boynes' help bought a box of bullets. The women then dropped him at a motel in Northeast Oklahoma City.

When the women returned to Lawton, they found several police cars at their house. Ultimately, Ms. Boynes accompanied the police back to Oklahoma City to show them where Wilson was staying. It was about 3:00 a.m. by this time. The Lawton Police, armed with an arrest warrant, asked the Oklahoma City Police for backup. The motel manager gave the police a pass key to Wilson's room and they used the key to enter the room unannounced, where they found appellant asleep on the bed. The arrest was uneventful. Some of the stolen jewelry was still tagged and was lying about in plain view, although the bulk of it was in a bag. The gun was also found in the room in the pocket of Wilson's pants, which were lying on the floor next to the bed.

Although repeatedly advised of his rights, appellant made numerous incriminating statements on the drive to Lawton. Shortly after arrival at the Lawton Police Station, Wilson signed a formal rights waiver; he then gave a formal written statement regarding the robbery and murder. In addition, Wilson claimed he committed 15 or more armed robberies in the Lawton area between January 25 and March 9, 1984.

The trial consisted of the State introducing the evidence of nineteen witnesses which consisted of experts, victims present at the robbery and policemen involved in the arrest. Appellant's attorney did not make an opening statement or put on any evidence in the first stage. It took the jury only eighteen minutes to return their verdict of guilty.

In addition to a claim of ineffective assistance of counsel, appellant claims only five errors in regard to the fairness of the guilt phase of the trial. He objects that certain evidence, which was admitted, was unlawfully seized and that certain other evidence which was admitted was not material and was prejudicial.

Appellant emphasizes that even though the Lawton Police had obtained an arrest warrant, that they knew appellant had the stolen goods and the murder weapon on him at the motel in Oklahoma City they still did not get a search warrant. At first glance it would appear the Lawton Police's failure to get a search warrant before they left Lawton is evidence they intended to conduct a warrantless search of the motel. The jurisdictional facts, however, are such that a lawful search warrant, if one proved necessary, could not have been issued in Comanche County since Comanche and Oklahoma counties are not in the same judicial district. *See Cunningham v. State*, 600 P.2d 337, 339 (Okl. Cr.1979). The Comanche County Magistrate did not have jurisdiction to issue a search warrant to be served in Oklahoma County. We find nothing sinister per se in the failure to get a search warrant prior to serving the arrest warrant. Likewise, we find no error in the trial attorney's failure to object at trial to the introduction of the items seized in the warrantless search. The seizure of the items in question was regular by virtue of the criteria of the "plain view" exception in search warrant requirements. *Smith v. State*, 698 P.2d 482, 484 (Okl.Cr.1985).

Appellant claims that the box of ammunition found on him when he was apprehended should not have been admitted because it was not relevant to prove any of the elements of the crime. The bullets were purchased several hours after the commission of the offense. Appellant claims it was prejudicial error to expose the jury to this evidence. *See* 12 O.S.1981, §§ 2104, 2402. Although appellant is correct that this evidence was irrelevant in the guilt stage of the trial, it was harmless error in light of the strong evidence of guilt. *See Raymond v. State*, 717 P.2d 1147, 1149 (Okl.Cr.1986).

Appellant claims the testimony of Celeste Boynes and Jeanette Garland should have had a cautionary instruction because they were informers. They apparently gained an advantage from the police for their cooperation and testimony. *See*

OUJI–CR 844. Appellant concedes such an instruction was not requested; but he claims the court had a duty to give it *sua sponte. Smith v. State*, 485 P.2d 771, 773 (Okl.Cr.1971). He also claims that an instruction, although not requested at trial, should have been given establishing Boynes and Garland as accomplices and specifying that their testimony had to be corroborated.

The failure to give a cautionary instruction is more often discretionary than it is fundamental. In this case, the circumstances and the testimony in question were not so extreme that the failure to give a cautionary instruction, resulted in an abuse of judicial discretion as it was in the case cited by appellant. *Id.* at 773. In *Gee v. State*, 538 P.2d 1102, 1106 (Okl.Cr.1975), this Court refused to make it mandatory that a cautionary instruction accompany an informant's testimony. We find no fundamental error occurred from the failure of the attorney to request such an instruction nor from the failure of the court to give one, *sua sponte.* The testimony of these two witnesses was merely cumulative; it would have been superfluous to have given such an instruction.

■ To label Boynes and Garland as accomplices is tenuous; however, we will assume, arguendo, that they were accomplices even though there is no evidence either Boynes or Garland were present when the plans were made or when the crimes were executed. *See State v. Truesdell*, 620 P.2d 427 (Okl.Cr.1980). The primary value of their testimony was to trace Wilson's activities after the crime. The robbery victim's testimony provided ample and somewhat repetitive evidence of Wilson's guilt. Considering the corroboration that was given at trial and the unquestionable guilt of appellant it was not error to fail to give an instruction on corroboration. *See Plummer v. State*, 515 P.2d 256, 261 (Okl.Cr.1973). The testimony of an accessory does not have to be corroborated and is a closer characterization of Boynes and Garland's role. *See Spees v. State*, 735 P.2d 571, 575 (Okl.Cr.1987); *Edmondson v. State*, 532 P.2d 81, 84 (Okl.Cr.1975).

In the final objections to the first stage of the trial appellant takes issue with certain of the remarks made by the prosecutor in closing argument. Since none of the comments were met with objection we have reviewed them for fundamental error only and do not find the verdict was affected, particularly in light of the overwhelming evidence of appellant's guilt. *Banks v. State*, 701 P.2d 418, 425 (Okl.Cr.1985).

Finally, appellant claims ineffective assistance of counsel. We do not find counsel's representation was defective as measured by the test set out in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The jury's verdict of guilty is affirmed.

■ Appellant's first objection to the second stage of the trial is a claim that the State failed to follow the notice provisions of the statute which provides that "[o]nly such evidence in aggravation as the state has made known to the defendant prior to his trial shall be admissible." 21 O.S.1981, § 701.10. The only notice given appellant was a Bill of Particulars that recited verbatim the statutory language of the two aggravating circumstances that would be pursued and a bare list of names and addresses of witnesses. *See* 21 O.S.1981, § 701.12. In addition to the statutory notice requirements, appellant filed a motion a month before trial asking the court to order the State to disclose the names of witnesses that would be called and to designate in which stage they would be asked to testify. Although this motion was granted, the State only partially complied.

The dissent argues that the prosecutor's notice of witnesses to be called "... as a witness in the cases in chief or in the second stage of the trial" was sufficient heading to clearly indicate when the witnesses would testify. The list contained twenty-six witnesses clearly for the first stage of the trial, but cited the "Second Stage of Trial" and listed three witnesses. The trial court's order specifically stated that the list should *"separately* state whether these witnesses will be called in the State's case in chief or during the punishment phase." (emphasis added). The no-

tice provided by the prosecutor did not comply with the trial court's order. Appellant's objection to the list should have been sustained.

The State called two Lawton Police detectives in both stages but had listed them only on the first stage list implying that they would not be used in the second stage. These officers provided evidence of appellant's potential for future dangerousness. One of the officers had been with appellant in the ride from Oklahoma City to Lawton. He testified to the threats Wilson made regarding what he was going to do to the person who turned him in. The other officer testified to the statement appellant gave when he was first interrogated in Lawton. Appellant admitted he had committed in excess of 15 armed robberies on the unsolved crime list the officer was working in the Lawton area. The evidence from these two officers was important to the State's case; it was not merely cumulative to the other evidence offered; therefore, it was prejudicial error for the court to overrule appellant's objection. The other witnesses on the second stage list were the victims of unadjudicated criminal offenses allegedly committed by appellant. Their testimony was unquestionably bolstered by the detective's testimony that Wilson had admitted committing those crimes.

The dissent states that one officer testified extensively at the preliminary hearing, which is true. It is also true that defense counsel did interview one officer in his office, but the statute does not provide that that is sufficient to meet the requirements of listing the witnesses for each stage of trial. Defense counsel already had authority to interview the officers and that had little to do with the provision to specifically list the witnesses. This issue is not what evidence is available but which of the avail-

able evidence a defendant would have to defend against.

The appellant was required to defend against the death penalty with an incomplete list of witnesses and without a precis [1] of the evidence that would be presented through the witnesses who would be called.

This is not the first time this Court has dealt with this issue. In *Walker v. State*, 723 P.2d 273, 285 (Okl.Cr.1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 599, 93 L.Ed. 2d 600, (1986), we stated:

> The purpose of notice prior to trial is to allow the defendant time to present a defense or an explanation for alleged criminal misconduct. *Johnson v. State*, 665 P.2d [815] at 823 [ (Okl.Cr.1982) ]. To enforce this policy, the Legislature has mandated that '[o]nly such evidence in aggravation as the State has made known to the defendant prior to his trial shall be admissible' at sentencing. 21 O.S.1981, § 701.10. We have held that '[t]his statute, together with Okla. Const. art. II, § 20, contemplates that a defendant in a capital murder case be provided with a *summary* of the evidence intended to support the alleged aggravating circumstances, and a list of witnesses the State might call.' *Green v. State*, 713 P.2d 1032, 1038 (Okl.Cr.1985) (emphasis added).

The court has heretofore rejected these claims on other grounds. In *Green*, the rule was announced "that failure to object to lack of notice, either at a pretrial hearing or at the time the challenged evidence is offered, will result in waiver of this statutory right". *Id.* at 1038; *cert. denied*, —— U.S. ——, 107 S.Ct. 241, 93 L.Ed.2d 165 (1986). In *Walker*, we also held that the pertinent information was communicated, although verbally, and that was sufficient notice to satisfy due process needs. *See*

---

**1.** Contrary to the views expressed in Judge Bussey's dissent, this statement is not an extension of the interpretation this Court has previously given Title 21 O.S.1981, § 701.10, but an enforcement of it. The state is not required to give a detailed description of the evidence that will be offered in order to meet the statutory notice required in section 701.10. Webster's New Collegiate Dictionary, 905, 1166, 234, 478 (1977), provides the following definitions: precis: a concise summary of essential points, statements, or facts; summary: covering the main points succinctly; concise: free from all elaboration and superfluous detail; general: relating to, determined by, or concerned with main elements rather than limited details.

*also Banks v. State*, 701 P.2d at 426. We have previously refused to require a formal hearing for the addition of aggravating circumstances added after the preliminary hearing. *Nuckols v. State*, 690 P.2d 463, 469 (Okl.Cr.1984), *cert. denied*, 471 U.S. 1030, 105 S.Ct. 2050, 85 L.Ed.2d 323 (1985). The issue in this case, however, is a lack of notice not sufficiency of notice, and there was no waiver.

This problem has arisen due to a lack of specificity in the statutes as to when and how a defendant should be advised of the evidence that will be offered in support of the aggravating circumstances alleged. Ever mindful that we are a Court and not a legislative body, of necessity we have to fill in the vacuum left in the statutes in this area one case at a time as the issues are presented.

Title 21 O.S.1981, § 701.10 provides in part:

> ... In the sentencing proceeding, evidence may be presented as to any mitigating circumstances or as to any of the aggravating circumstances enumerated in this act. *Only such evidence in aggravation as the state has made known to the defendant prior to his trial shall be admissible* ... (emphasis added).

The failure to include the names of the two detectives on the list of second stage witnesses is a total failure to give notice. 21 O.S.1981, § 701.10. Furthermore, the failure to describe the evidence to be given by the persons named on the second stage list was error. *See Johnson v. State*, 665 P.2d 815, 823 (Okl.Cr.1982). These two errors are of State and Federal Constitutional proportions and are not so called "legal technicalities."

On June 27, the third day of the trial, the guilty verdict having been read at the close of the day on the 26th, appellant filed a motion with brief asking the Court to strike all evidence of aggravation when offered by the State. He was objecting, albeit for the first time, to the State's failure to provide notice describing the evidence to be offered to prove the aggravating circumstances. The Court apparently overruled the motion off the record. Ap-

pellant reasserted this objection after the first witness from the list testified. This objection was also overruled; the Court granted appellant a continuing objection. We find appellant's objections should have been sustained. They were both timely and sufficiently specific to preserve this error for review. *See* 12 O.S.1981, § 2104. The prosecutor was grossly negligent in his failure to follow the law and comply with the court's order. His error was compounded by the trial court's failure to sustain appellant's objection and enforce its own orders.

This leaves only the first stage evidence to support the State's case that there were aggravating circumstances which when weighed against any mitigating circumstances would justify the imposition of the death penalty. *See Stout v. State*, 693 P.2d 617, 627 (Okl.Cr.1984), *cert. denied* 472 U.S. 1022, 105 S.Ct. 3489, 87 L.Ed.2d 623 (1985). Since none of the evidence offered at the second stage to prove the aggravating circumstances can be considered in assessing the death penalty, it is not surprising that there was insufficient admissible evidence to find "beyond a reasonable doubt" that appellant should be sentenced to death on either of the aggravating circumstances. 21 O.S.1981, § 701.11. Appellant also claims that the State did not properly offer the first stage evidence for consideration in the second stage, therefore, there is no evidence of any aggravating circumstances. Considering the insufficiency of that evidence to prove any aggravating circumstances, it is moot that the formalities were not properly observed.

Accordingly, we find no error in the first stage of appellant's trial; it was clearly proven appellant committed first degree felony murder. Appellant's conviction is therefore affirmed. However, due to the State's failure to give notice as required by 21 O.S.1981, § 701.10, we find the death sentence for appellant cannot stand and this Court is compelled to modify his sentence to life imprisonment. 21 O.S.1981, § 701.13(E)(2). We therefore AFFIRM ap-

pellant's conviction as MODIFIED to life imprisonment.

BUSSEY, J., concurs in part, dissents in part.

PARKS, J., specially concurs.

BUSSEY, Judge, concurring in part/dissenting in part:

I agree that the determination as to appellant's guilt must be affirmed. However, I also believe that the sentence of death is well supported by the record, and would affirm.

The purpose of the notification requirement in 21 O.S.1981, § 701.10 is to eliminate any element of surprise when the death penalty is sought. *Johnson v. State,* 665 P.2d 815, 819 (Okl.Cr.1982). So long as the defendant is able to prepare his defense, his assignment that notice was insufficient is without merit. *Banks v. State,* 701 P.2d 418, 426–427 (Okl.Cr.1985). My collegues on this Court have chosen to modify the sentence in this case because the State failed to provide a "[ ]complete list of witnesses [or] a precis of the evidence that would be presented through the witnesses who would be called," or due to the State's failure to provide a "concise summary of the 'evidence' to be relied upon." I simply cannot agree that the record shows a failure to list the witnesses, and cannot find that the presentation of evidence by the State resulted in unfair surprise to the defense. Nor can I join in the language that there must be a "precis of the evidence" or a "concise summary." Our cases in the past have, in general language, required that the State provide "a summary of the evidence intended to support the alleged aggravating circumstances." *See Green v. State,* 713 P.2d 1032, 1038 (Okl.Cr.1985); *Walker v. State,* 723 P.2d 273, 285 (Okl.Cr.1986). I would not extend the requirement to require any more than a general summary.

The record in this case does indeed contain an order of the trial judge directing the prosecutor to "Endorse Names of Witnesses and to separately state whether these witnesses will be called in the State's case in chief or during the punishment phase of [appellant's] trial, if necessary...." However, the record also discloses that the prosecutor in fact complied with that order by filing a notice of witnesses to be called. The language of that notice is as follows:

Comes now the State of Oklahoma, Plaintiff herein, and provides the following list of all witnesses which the State anticipates calling as a witness or possibly using as a witness in the cases in chief *or in the second stage of the trial.* Not included are any possible rebutal witnesses."

(Emphasis added).

The notice then proceeds to list several witnesses, including the two officers whose testimony is here callenged. At the end of the notice is a list of persons who would be called exclusively as second stage witnesses.

The trial court's order did not direct that a list of witnesses for the first stage should be prepared, and that a list of witnesses for the second stage be prepared separately. Rather, it required that all witnesses be endorsed and that the prosecutor state in which stage each witness would be called. There was no failure to comply.

As to the content of the testimony given, the question is not how the evidence used was disclosed to the defendant, but whether its admission resulted in unfair surprise. *Johnson, supra;* and *Banks, supra.* The record reflects, and is nowhere controverted, that defense counsel interviewed one officer in his own office. The other testified extensively at preliminary hearing, disclosing everything to which he testified in the sentencing proceeding. The testimony at preliminary hearing was elicited by questions from defense counsel, not the prosecutor. In the case of *Walker v. State,* 723 P.2d 273 (Okl.Cr.1986), we held that although no written notice of evidence to be offered in aggravation was submitted as contemplated by the statute, a conversation between defense counsel and the prosecutor which relayed the challenged information rendered the assignment meritless. So, too, must the assignment fail in this

case. Defense counsel was clearly aware of this evidence and could not have been surprised.

Next, the question of sufficiency of the evidence to support the aggravating circumstance of knowingly creating a great risk of death to more than one person must be addressed. Appellant correctly points out that the prosecutor never formally offered evidence from the first stage for admission in the second stage. Instruction number 11, Which quoted the language of OUJI–CR 442, informed the jury that "you are authorized to consider only the evidence received here in open court presented by the State and the defendant during the sentencing phase of this proceeding." However, I feel it necessary to take this opportunity to express my concern that OUJI–CR 442 does not accurately reflect the law in this State.

Restricting the jury's consideration of evidence to that which is received after the guilty verdict is reached imposes a requirement not contained in the statutes or cases in this State. It is worthy of note that six of the eight aggravating circumstances listed in 21 O.S.1981, § 701.12 may require that circumstances of the murder itself be considered.[1] The sentencing proceeding required by statute is not a new and separate trial; rather, it is but one stage of a single trial. If the sentencing jury were not to be aware of the evidence presented during the guilt stage, then Section 701.10 certainly would not mandate that the same jury must be used in both stages. To instruct the jury that it may not consider first stage evidence unless once again received after the guilt stage is completed defies common sense and flies in the face of what appears to be clear legislative intent. It is also contrary to decisions of this Court. *See, Stout v. State,* 693 P.2d 617, 627–628 (Okl.

Cr.1984). The instruction contained at OUJI–CR 442 ought to be modified in every capital sentencing proceeding.

Testimony at trial amply supported the aggravating circumstances that (1) there was a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society, and (2) appellant knowingly created a great risk of death to more than one person. The sentence of death was not imposed under the influence of passion, prejudice, or any other arbitrary factor. Accordingly, the death sentence ought to be affirmed. I would so hold, and must therefore respectfully dissent.

PARKS, Judge, specially concurring:

■ First, I wish to comment on the prosecutor's failure to comply with 21 O.S. 1981, § 701.10, which provides in pertinent part: "Only such evidence in aggravation as the state has made known to the defendant prior to his trial shall be admissible." When Section 701.10 is read together with Article II, Section 20 of the Oklahoma Constitution, it is clear that the State has an affirmative duty prior to trial to provide an accused in a capital case with (1) a concise summary of the "evidence" to be relied upon to support the aggravating circumstances alleged, and (2) a list of the witnesses to be called at trial. *See Walker v. State,* 723 P.2d 273, 285 (Okla.Crim.App. 1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 599, 93 L.Ed.2d 600 (1986). Here, the Bill of Particulars filed by the State recited only the specific aggravating circumstances alleged to exist; no summary of the "evidence" to be used to support such aggravating circumstances was given as required by Section 701.10. The concise summary requirement cannot be met by simply

---

1. 21 O.S.1981, § 701.12 provides the following circumstances which require a consideration of the facts of the case in chief:

 \* \* \* \* \* \*

 2. The defendant knowingly created a great risk of death to more than one person;
 3. The person committed the murder for remuneration \* \* \*;
 4. The murder was especially heinous, atrocious, or cruel;

 5. The murder was committed for the purpose of avoiding or preventing a lawful arrest or prosecution;
 6. The murder was committed by a person while serving a sentence of imprisonment on conviction of a felony;
 8. The victim of the murder was a peace officer.

 \* \* \* \* \* \*

giving notice of which aggravating circumstances will be relied upon during the sentencing stage. Accordingly, the notice given in this case was woefully inadequate and requires this Court to vacate the appellant's sentence of death.

The majority opinion states at page 8 that the notice problem "has arisen due to a lack of specificity in the statutes as to when and how a defendant should be advised of what evidence will be offered in support of the aggravating circumstances alleged" and that this Court "of necessity" must "fill in the vacuum left in the statutes in this area one case at a time...." It is true that Section 701.10 does not state any specific time period for complying with its notice provisions, except to require that such notice be given "prior to ... trial...." Even so, the Court has previously recognized that the purpose of our constitutional and statutory notice provisions in the context of a capital case is "to afford a defendant the opportunity 'to present a defense or an explanation for the alleged criminal conduct.'" *Walker, supra,* at 285 (Quoting *Johnson v. State,* 665 P.2d 815, 823 (Okla. Crim.App.1982)).

The majority opinion does not set a specific time limit on the notice requirement, nor do I believe that it is within the province of this Court to do so. We must recognize, however, that the notice requirement of Section 701.10 has constitutional implications insofar as a plurality of the United States Supreme Court has held that a capital defendant is denied due process "when the death sentence was imposed, at least in part, on the basis of information which he had no opportunity to deny or explain." *Gardner v. Florida,* 430 U.S. 349, 363, 97 S.Ct. 1197, 1207, 51 L.Ed.2d 393 (1977). "If a person is to be executed, it should be as a result of a decision based on reason and reliable evidence—not as a result of ambush." *Gholson v. Estelle,* 675 F.2d 734, 738 (5th Cir.1982). In my view, in the case at bar, the reliability of the death sentence was impermissibly reduced below minimal standards of due process, because of the denial of a meaningful opportunity for the defendant or his counsel to deny, explain, argue, or in any way

challenge, the accuracy or materiality of the State's second stage evidence. *Id. See also U.S. Const.* amend. XIV; *Gardner, supra; Okla. Const.* art. II, § 7.

This Court cannot and will not tolerate capital trials based on principles of gamesmanship and "trial by ambush" tactics. Our system of justice has traditionally rested on the foundation that adversarial debate is an essential component of the truth-seeking process. It follows that an accused and his attorney must be given sufficient notice of the evidence to be used by the State to obtain a sentence of death, to allow the accused a reasonable and meaningful opportunity to deny or explain the evidence against him. Such determinations must be made by this Court on a case-by-case basis.

Second, with regard to the admissibility of first stage evidence to support the death penalty, contrary to the majority's position, I believe that the prosecutor should be required to formally introduce first stage evidence for consideration during the second stage. *See Stout v. State,* 693 P.2d 617, 629 (Okla.Crim.App.1984) (Parks, J., Specially Concurring). Following discussion of this issue during oral argument, counsel for appellee conceded in a handwritten response that the "record does not reflect a formal motion to incorporate [first stage evidence] or an announcement of such to the jury by the trial court." In any event, the trial judge's giving of Instruction No. 11 during the second stage specifically precluded the jury from considering first stage evidence in assessing punishment:

IN ARRIVING AT YOUR DETERMINATION AS TO WHAT SENTENCE IS APPROPRIATE UNDER THE LAW, YOU ARE AUTHORIZED TO CONSIDER ONLY THE EVIDENCE RECEIVED HERE IN OPEN COURT PRESENTED BY THE STATE AND THE DEFENDANT DURING THE SENTENCING PHASE OF THIS PROCEEDING.

(O.R. 173) Accordingly, the first stage evidence cannot be used to support the aggravating circumstances. Because no valid

aggravating circumstances remain, it is not appropriate to independently reweigh aggravating and mitigating circumstances. *See Castro v. State,* 749 P.2d 1146 (Okla. Crim.App.1987); *Stouffer v. State,* 742 P.2d 562 (Okla.Crim.App.1987) (opinion on rehearing). Accordingly, I concur in the modification of the appellant's sentence of death to life imprisonment.